Argued and submitted April 3, reversed and remanded May 10, Tolbert's reconsideration and First National Bank's reconsideration denied August 18, both petitions for review denied October 26, 1989 (308 Or 466)

# TOLBERT et al,
## *Appellants,*

### *v.*

# FIRST NATIONAL BANK OF OREGON,
## *Respondent.*

### (A8004-02328; CA A37591)

772 P2d 1373

Phil Goldsmith, Portland, argued the cause for appellants. With him on the briefs were Jerome E. LaBarre and LaBarre & Associates, P.C., Portland, and John D. Ryan and Ryan & Helzer, Beaverton.

William M. McAllister, Portland, argued the cause for respondent. With him on the brief were Christine Kitchel,

Edward J. Reeves and Stoel Rives Boley Jones & Grey, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiffs in this class action are persons with non-business checking accounts at the defendant bank who seek to recover part of the amounts that they paid as insufficient fund (NSF) check charges between April, 1974, and April, 1980. Plaintiffs alleged in separate claims that the charges were unconscionable, that they were an unlawful penalty and that they constituted a breach of defendant's obligation to perform its contracts with depositors in good faith. The trial court granted defendant's motions for summary judgment on the unconscionability and good faith claims, and a jury found for defendant on the penalty claim. Plaintiffs' only assignment in this appeal is that the court erred by granting the partial summary judgment on the good faith claim.

This case is generally similar to *Best v. U. S. National Bank,* 303 Or 557, 739 P2d 554 (1987).[1] The court held there that the trial court erred by granting summary judgment for the bank on an analogous claim and explained:

> "Nothing in the depositors' account agreement with the Bank expressly limited the Bank's authority to set NSF fees. This court has long stated, however, that there is an obligation of good faith in the performance and enforcement of every contract. * * * This obligation limited the Bank's apparently unlimited authority to set NSF fees, and the depositors can recover for the breach of this obligation just as they could for the breach of any other contractual obligation.

> "The Bank and *amicus curiae* First Interstate Bank of Oregon argue that the doctrine of good faith is inapplicable because the depositors agreed to the NSF fees by maintaining their accounts, which they could close at any time. Whether the depositors agreed to the specific fees charged, however, is a question of fact that cannot be decided on a motion for summary judgment. The argument of the Bank and *amicus* assumes that the depositors knew or should have known the amount of the fees when they wrote their NSF checks. This assumption does not necessarily follow from the evidence. The practice of Bank employees who opened accounts was not to inform depositors of the amount or even of the existence of NSF fees unless the depositor inquired. The Bank also did not notify depositors when it increased its NSF fees. In the

---

[1] *Best* and this case began as companion cases, and the trial court ruled on the summary judgment motions in both cases simultaneously.

absence of inquiry, a depositor would ordinarily know the amount of the fee only if the depositor had been charged a fee in which case the amount would appear on the depositor's monthly statement of account. Moreover, even if the depositor discovered the current amount of the NSF fee, the depositor could never be certain of the fee that would be charged because the Bank could increase or decrease the fee at any time without notice. It would be improper under this evidence to conclude on a motion for summary judgment that the depositors agreed to the charges through failing to close their accounts.

"Assuming that there was no agreement, the question before us is whether there is a genuine issue of material fact whether the Bank set its NSF fees in good faith.

"\* \* \* \* \*

"When a party has the contractual right to specify a price term, the term specified may be so high or low that the party will be deemed to have acted in bad faith regardless of the reasonable expectations of the other party. In this respect the good faith and unconscionability doctrines tend to run together. In general, however, whether a specified price violates the obligation of good faith should be decided by the reasonable contractual expectations of the parties. In this instance we conclude that the Bank's NSF fees were not so high as to be evidence of bad faith for that reason alone.

"Nevertheless, we believe that there is a genuine issue of material fact whether the Bank set its NSF fees in accordance with the reasonable expectations of the parties. The record shows that when the depositors opened their accounts, the only account fees that would ordinarily be discussed would be the Bank's monthly and per check charges, if any. The sole reference to NSF fees was contained in the account agreement signed by the depositors, which obligated them to pay the Bank's 'service charges in effect at any time.' Because NSF fees were incidental to the Bank's principal checking account fees and were denominated 'service charges,' a trier of fact could infer that the depositors reasonably expected that NSF fees would be special fees to cover the costs of extraordinary services. This inference could reasonably lead to the further inference that the depositors reasonably expected that the Bank's NSF fees would be priced similarly to those checking account fees of which the depositors were aware—the Bank's monthly checking account service fees and per check fees, if any. By 'priced similarly,' we mean priced to cover the Bank's NSF check processing costs plus an allowance for overhead

costs plus the Bank's ordinary profit margin on checking account services.

"Finally, assuming that the Bank's obligation of good faith required the bank to set its NSF fees in accordance with its costs and ordinary profit margin, there was evidence that the Bank breached the obligation. The Bank's own cost studies show that its NSF fees were set at amounts greatly in excess of its costs and ordinary profit margin." 303 Or at 561-66. (Citations and footnote omitted.)

Most of the pertinent facts here are materially identical to those in *Best.* Defendant retained the ability to change its NSF charges unilaterally. However, unlike the bank in *Best,* defendant followed the practice of informing depositors of its current NSF and other service charges at the time when they opened their accounts. As explained in plaintiffs' brief:

"Each person who opened a checking account at First National after March, 1975, received a Service Charge Guide or similar document listing the charges assessed by First National for various services. These documents were also sent periodically by mail to existing customers.

" 'The Service Charge Guides' purpose was 'to inform [the customer] about First National's checking and savings account service charges.' They set forth the dollar amount of various charges on personal checking accounts, including the monthly account charge, the per check fee and a charge described as the fee for 'Non-sufficient Funds Checks Paid or Returned.' They further established that '[t]hese charges are subject to change at the discretion of First National.' " (Brackets plaintiffs'.)

The parties disagree about whether and how that factual difference affects the controlling status of *Best v. U. S. National Bank, supra,* here. Plaintiffs maintain that *Best* controls completely, and defendant says that the different facts render the *Best* principle inapposite. Plaintiffs reason that, although depositors were apprised of the amount of the charge when they opened their accounts, they were not informed about how it was calculated, and a trier of fact could find that their reasonable expectation was that "any charge set would be based on [defendant's] costs and ordinary profit margin. Thus, the fact that the charge was disclosed has no bearing on the legal principles governing this case." Defendant responds that the reasonable expectation principle does not apply to

charges that were established and known to and accepted by depositors when they contracted with defendant. It argues that the *Best* principle is applicable only when unilateral discretion can be exercised in the performance of a consummated agreement. Defendant contends further that the increased charges that it established after the various contracts were formed are also beyond the scope of *Best,* because depositors were kept informed of the changes through periodic mailings.

■     We agree with defendant that the depositors' reasonable expectations about pricing are irrelevant to charges that were in effect when a depositor opened an account and of which he was apprised at that time. We agree with plaintiffs that the good faith obligation and reasonable expectation principle are pertinent to charges that were revised upward and assessed against a depositor after the account was opened. The reasoning in *Best* is to the effect that the bank's good faith obligation and the depositors' reasonable expectations relate to terms or conditions that the bank may establish unilaterally after the agreement has been formed. A charge that both parties knew and had the ability to accept or reject at the time of the agreement falls outside that rationale.

■ ■     We do not agree with defendant that its revised charges are also beyond the reach of *Best.* Although defendant provided customers with periodic information about the revisions, we understand *Best* to mean that the obligation of good faith arises in connection with the unilateral fixing of charges after the parties have reached an original agreement. That obligation is not eliminated by the facts that defendant notified its depositors about increases in the charges and that the depositors had the ability to terminate their accounts after receiving the notification. Good faith is required in the performance of the contract and the exercise of discretion under it, and it is immaterial that a party could terminate the contract if it were dissatisfied with the way in which the other exercises its discretion. We also agree with plaintiffs, for essentially the same reasons as those stated in *Best,* that there are genuine issues of material fact about whether defendant acted in good faith in setting the revised charges.

Defendant contends that plaintiffs' argument, if adopted, would require that we decertify the class, because

common questions of fact and law would no longer predominate. Defendant explains:

> "[P]laintiffs' appeal issue goes beyond the scope of the issues certified for class treatment; no class has been certified on whether First Interstate met reasonable expectations in setting its NSF service charges.
>
> "* * * * *
>
> "[Q]uestions of law or fact common to the members of the class would not predominate over the reasonable expectations of individual members. *See* ORCP 32 B(3)."

Plaintiffs answer that defendant is incorrect on the merits of its argument and that, in any event, we cannot decertify the class, because defendant did not cross-appeal.

Whether or not defendant's argument would be correct if we had agreed with plaintiffs' argument in its entirety, the conclusions that we have reached may necessitate many separate adjudications regarding the charges that were in effect when individual class members opened their accounts and whether those charges or revised ones were assessed against them. We nevertheless conclude that we cannot or should not decertify the class in this appeal. Assuming that we could do so, despite defendant's failure to cross-appeal, we think that the question is one that the trial court would be in a better position to consider on remand than we are. *See* ORCP 32C(1).

Reversed and remanded.[2]

---

[2] The parties' other arguments require no discussion beyond the answers to them that have been expressly or implicitly given in *Best v. U. S. National Bank, supra,* and in this opinion.