Argued and submitted May 10, at Pendleton, Oregon, affirmed October 23, 1991

Archie HARRIS
and Marjorie Harder,
*Respondents,*

*v.*

James S. GRIFFIN;
James S. Griffin Co.; Maz Enterprises; R. Keith Adams;
Wayne C. Miller; Keith Adams, aka R. Keith Adams;
Alice M. Adams; Donald F. Edwards; Alberta Edwards;
Robert W. Bailey; Patricia E. Bailey; Albert A. Graham;
Cheryl J. Graham; James L. Hull; Anita L. Hull;
Robert M. Hull; Daphne D. Hull; J. T. Moore;
Gladys Moore; Elmer J. Podratz; Doris M. Podratz;
Thomas G. Silvers; Juanita Silvers; Michael L. Stoner;
Cathy L. Stoner; W. L. Stoner; Dolores Stoner;
Susan K. Stoner, kna Susan K. Robinson; Henry J. Ternes;
Florence Ternes; Gary E. Bosch; Naydene L. Bosch;
Thomas L. Bosch and Mary P. Bosch,
*Appellants,*

*and.*

Kenneth S. TURNER
and Pamela J. Turner,
*Defendants.*

(CV 90-53; CA A66012)

818 P2d 1289

Michael B. Collins, Pendleton, argued the cause for appellants. With him on the briefs was Collins & Collins, Pendleton.

Robert T. Mautz, Pendleton, argued the cause for respondents. On the brief were W. Eugene Hallman and Mautz Hallman, Pendleton.

Before Richardson, Presiding Judge, and Joseph, Chief Judge,* and Deits, Judge.

RICHARDSON, P. J.

---

* Joseph, C. J., *vice* Newman, J., retired.

## RICHARDSON, P. J.

Defendants buyers[1] appeal the summary judgment and resulting interlocutory decree for the plaintiff sellers in this action for strict foreclosure of a land sale contract. We affirm.

The contract was entered into in 1971. It contains a time of the essence clause, requiring annual payments on December 1. The contract document contains a handwritten addition purporting to require plaintiffs "to cooperate with purchaser in any rezoning, platting, subdividing" and "to sign necessary documents for such application." However, that language was added and initialed only by one of the buyers, who had signed and recorded the instrument after the sellers had signed it and forwarded it to them. Plaintiff Harris' uncontroverted affidavit says that he was unaware of the added language and had not agreed to it. The timing of the payments was erratic during the early years of the contract; however, for a period of approximately 14 years preceding 1989, the payments were made on time.

In early November, 1989, defendants requested that plaintiffs sign a partition application. Late in that month, they forwarded their annual payment to their attorney, with instructions that he not deliver it to plaintiffs until they signed the application. On December 15, the county planning department accepted the application without plaintiffs' signature. The payment was delivered to plaintiffs that day. According to Harris' affidavit, he notified the attorney on the same day that he was accelerating the balance because he had not received the "installment payment due December 1, 1989." In January, he returned the check with the notation:

"The balance showing on the check is wrong so am sending it back. As you know, the full balance is now due."

ORS 81.020 provides:

"The person to whom a tender is made shall at that time specify any objection the person may have to the money, instrument or property or the person shall be deemed to have waived it; and if the objection is to the amount of money, the

---

[1] The direct purchasers and various persons holding successorship and other interests are named as defendants. Because no differentiation is required by the facts relevant to our decision, we will refer to them collectively as "defendants."

terms of the instrument or the amount or kind of property, the person must specify the amount, terms or kind which the person requires or be precluded from objecting afterwards."

Defendants rely on that statute and argue that plaintiffs' rejection of the payment in January was untimely and did not specify with the necessary particularity why the tender was rejected.

■ We need not decide whether ORS 81.020 has any application to the rejection of an untimely tender that violates a time of the essence clause, *see Gordon v. Schumacher*, 83 Or App 544, 733 P2d 35, *rev den* 303 Or 370 (1987); *but see Lent v. Towery*, 271 Or 41, 530 P2d 77 (1975), because the balance was accelerated by Harris' December 15 notice that he was taking that action in response to defendants' failure to make a timely payment. His return of the check in January, and the notation on it, have no bearing on the invocation of his acceleration rights. The acceleration provides an independent basis for the relief that plaintiff seeks, and it is immaterial whether the return of the check in January had to or did comply with the statute. Even assuming that the statute applies to the December 15 notice, it did comply with the requirements.[2]

■ Defendants argue, however, that plaintiffs waived the time of the essence provision by accepting late payments on many occasions during the life of the contract. Plaintiffs respond that, in recent years, the payments have been timely or nearly so[3] and, therefore, no waiver can be inferred. A pattern of accepting late payments may have the effect of waiving a time of the essence clause, subject to the seller's right to reinstate it by proper notice and by providing the buyer a reasonable opportunity to cure any delinquency. *See Legg v. Allen*, 72 Or App 351, 696 P2d 9 (1985), and authorities there cited.

---

[2] It is not clear from the record whether the notice was sent before or after the payment was received.

[3] Two of the recent payments had been *received* on December 2. That does not alter our analysis. As examples of the earlier history, the 1972 payment was made in two installments on March 15 and July 22, 1973, and the 1974 payment was received on January 27, 1975. The pattern of timely payments began in 1975 or 1976, although the 1981 payment was made on December 5.

■ We agree with plaintiffs that, as a matter of law, the time of the essence clause was enforceable. If the earlier acceptance of late payments had the effect of waiving the provision, the timely payments over the 14 years preceding the 1989 breach had the effect of reinstating it. There was no pattern of accepting late payments at the relevant time, and plaintiffs were not required to send a notice of reinstatement to induce defendants to do what they were already doing. Plaintiffs were entitled to enforce the provision, and we reject defendants' contentions to the contrary.

■ Defendants next argue that there was a material question of fact as to whether the interlineated language pertaining to land use approvals was part of the contract and, therefore, as to whether plaintiffs had failed to perform a material condition, giving defendants the right to withhold the payment. Their starting premise is wrong. The evidence in the record supports only the inference that the language was added by the buyers without the sellers' knowledge.

■ Defendants' next argument is that "[t]here is a factual issue in this case regarding whether the plaintiffs, in declaring a default and seeking to accelerate, breached [the implied duty of good faith and fair dealing] with defendants." Assuming, without deciding, that the implied duty of good faith and fair dealing can have any application in connection with a seller's exercise of an express contractual right to declare a default and accelerate, *but see Sheets v. Knight,* 308 Or 220, 779 P2d 1000 (1989); *Tolbert v. First National Bank,* 96 Or App 398, 772 P2d 1373 (1989), *rev allowed* 309 Or 333 (1990), the specific points that defendants make to support their argument show nothing except that plaintiffs exercised that right under circumstances that entitled them to do so, but which defendants think called for forebearance. In other words, defendants maintain, plaintiffs breached the implied duty by doing exactly what the contract expressly permitted them to do. As the court said in *Sheets v. Knight, supra,* 308 Or at 233, "It is not appropriate to imply the duty if it is inconsistent with a provision of the contract." We reject the argument.

Defendants' remaining argument is that there was a factual question as to the balance due under the contract. We find no error.

Affirmed.