Argued and submitted April 12, 1990, the decision of the Court of Appeals affirmed in part and reversed in part and the judgment of the circuit court affirmed December 19, 1991

William J. and Melanie TOLBERT
and Beverly Witt,
for themselves individually and
for all other persons similarly situated,
*Petitioners on Review/*
*Respondents on Review,*

*v.*

FIRST NATIONAL BANK
OF OREGON,
*Respondent on Review/*
*Petitioner on Review.*

(CC A8004-02328; CA A37591;
SC S36375, S36376)

823 P2d 965

Phil Goldsmith, Portland, argued the cause for petitioners on review/respondents on review Tolbert, et al. With him on the petition for review, petition for reconsideration, and response were Jerome E. LaBarre, of LaBarre & Associates, P.C., Portland, and John D. Ryan, Beaverton.

William M. McAllister, of Stoel Rives Boley Jones & Grey, Portland, argued the cause for respondent on review/ petitioner on review First National Bank of Oregon. Also on the response and reply were Christine Kitchel, Edward J. Reeves, and Glenn J. Hovemann, Portland.

Henry Kantor, of Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland, filed a brief on behalf of *amici curiae* Oregon Trial Lawyers Association; Multnomah County Legal Aid Service; Ecumenical Ministries of Oregon; Forelaws on Board; Pineros Y Campesinos Unidos Del Noroeste; Portland Gray Panthers; Portland Chapter of Oregon Fair Share; Local 2949 of the Lumber and Sawmill Workers Union; Banks & Newcomb; Griffin & McCandlish; Pozzi, Wilson, Atchison, O'Leary & Conboy; Stoll, Stoll, Berne & Lokting; Williams, Troutwine & Bowersox; Willner & Associates; Roger Anunsen; Frank J. Dixon; Gregory Kafoury; Mark Anthony LaMantia; James T. Massey; Roger Tilbury; Linda K. Williams; and Jan Wyers.

Before Peterson, Chief Justice,** and Carson,*** Jones,**** Gillette, Van Hoomissen, Fadeley, and Unis, Justices.

CARSON, C. J.

---

** Chief Justice when case argued.

*** Chief Justice when decision rendered.

**** Jones, J., resigned April 30, 1990.

## CARSON, C. J.

This class action involves the obligation of good faith in the performance of contracts. The primary issue is the nature of the good faith obligation owed by defendant First National Bank of Oregon (Bank)[1] to its non-business checking account customers (depositors) in setting and revising, from time to time, the fees it charged to depositors who wrote checks when there were not sufficient funds in their accounts (NSF fees).

The trial court granted Bank's motion for summary judgment on the issue of whether it had failed to act in good faith regarding the NSF fees.[2] The Court of Appeals reversed the judgment of the trial court and remanded the case. *Tolbert v. First National Bank*, 96 Or App 398, 772 P2d 1373 (1989). Bank and plaintiffs each sought review by this court. We allowed both plaintiffs' and Bank's petitions for review, and we now reverse in part and affirm in part the decision of the Court of Appeals.

This case began as a companion case to *Best v. U.S. National Bank*, 303 Or 557, 739 P2d 554 (1987),[3] and a review of our opinion in that case is essential to an understanding of this case. Accordingly, we begin with an examination of *Best*.

In *Best*, the plaintiff depositors brought a class action alleging, among other things, that the bank "had an obligation to set its NSF fees in good faith and that it breached this obligation by setting its fees at amounts greatly in excess of the costs incurred by it in processing NSF checks." 303 Or at 561. In addressing this issue, the *Best* court began by stating the general rule that there is an obligation of good faith in the performance and enforcement of every contract. *Id*. The bank in that case argued that it had

---

[1] First National Bank of Oregon now is known as First Interstate Bank of Oregon, N.A.

[2] Plaintiffs' complaint also included claims based on unconscionability and on the theory that the NSF fees were unlawful penalties. The trial court granted Bank's motions for summary judgment on the unconscionability and good faith claims, and a jury found for Bank on the unlawful penalty claim. Only the good faith claim is before us.

[3] *Best v. U.S. National Bank* also came to this court in the procedural posture of a summary judgment.

no obligation of good faith, because the depositors *agreed* to the NSF fees, as manifested by their choice not to close their accounts.

The *Best* court rejected this argument, pointing out that it was not the bank's practice to inform depositors of the initial NSF fees or of changes in the amount of such fees: "It would be improper under this evidence to conclude on a motion for summary judgment that the depositors agreed to the charges through failing to close their accounts." *Id.* at 562. Having concluded that there was no agreement regarding the NSF fees, the court went on to determine whether there was a genuine issue of material fact whether the bank set (and revised) its NSF fees in good faith.

After reviewing cases from this court and examining the Restatement (Second) of Contracts, the court explained the role of the parties' expectations in the framework of the good faith obligation:

"It is therefore not necessarily sufficient * * * that the Bank acted honestly in setting its NSF fees or that its fees were similar to those of other banks. Undoubtedly, parties to a contract always expect that the other party will perform the contract honestly and, where the performance of a commercial enterprise is at issue, ordinarily expect that it will do so in a commercially reasonable manner. But the reasonable expectations of the parties need not be so limited.

"* * * * *

"* * * In general, * * * whether a specified price violates the obligation of good faith should be decided by the reasonable contractual expectations of the parties." 303 Or at 564-65.

The court continued the "reasonable expectations" analysis, applying the general rules of law set forth above to the *Best* facts:

"Because NSF fees were incidental to the Bank's principal checking account fees and were denominated 'service charges,' a trier of fact could infer that the depositors reasonably expected that NSF fees would be special fees to cover the costs of extraordinary services. This inference could reasonably lead to the further inference that the depositors reasonably expected that the Bank's NSF fees would be priced similarly to those checking account fees of which the

depositors were aware — the Bank's monthly checking account service fees and per check fees, if any. By 'priced similarly,' we mean priced to cover the Bank's NSF check processing costs plus an allowance for overhead costs plus the Bank's ordinary profit margin on checking account services." *Id.* at 565-66.

Because there were genuine issues of material fact regarding the depositors' expectations and regarding whether the bank had, in fact, set the NSF fees in accordance with those expectations, the court concluded that summary judgment was inappropriate on the good faith claim. *Id.* at 566.

The holdings of the *Best* case relevant to the case before us may be summarized as follows:

• It is improper to decide on summary judgment whether depositors have agreed to a bank's NSF fees when neither the initial fees nor changes in the fees are disclosed to the depositors before assessment of the charges.

• In determining whether a bank has acted in good faith in setting its NSF fees, the reasonable expectations of its depositors are relevant. A depositor may reasonably expect that NSF fees are set using the same mechanism as other checking account service charges of which the depositor is aware — a "cost-plus" basis in that case.

The parties to this case agree that there are two important factual differences between this case and *Best*; the dispute is over the legal significance of those differences. The first difference is that, unlike the bank in *Best*, Bank followed the practice of informing depositors of its current NSF fees at the time they opened their accounts. Depositors signed an account agreement, which included an agreement that all deposits to the account would be governed by, among other things, "the rules, regulations, and customs of this Bank including, but not limited to, those which relate to interest and *service charges* on active and dormant accounts." (Emphasis added.)

At the time depositors opened their accounts, they received a Service Charge Guide or similar document listing the charges assessed by Bank for various services. The guide listed a fee for "Non-sufficient Funds Checks Paid or Returned." The guide also included the following statement:

"These charges are subject to change at the discretion of First National. If you have questions or need additional information regarding our services, procedures, or charges, please contact any First National branch for assistance."

Further, the evidence before the trial court was that Bank employees routinely explained Bank's service charges to new depositors at the time an account was opened. If a depositor did not agree to the terms of the account agreement, Bank would refuse to open an account.

The second difference between this case and *Best* is that, here, depositors were informed of changes in the service charges by mail at or near the time the changes were made. Bank produced evidence that it periodically sent notices to each depositor, with depositor bank statements, stating current prices for all bank service charges related to checking accounts (including NSF fees).

■ Plaintiffs take the position that our holding in *Best v. United States National Bank, supra,* dictates the result in this case and that the factual distinctions between the two cases have no legal significance. They assert:

"[T]he Bank's Service Charge Guides made two separate representations to its depositors at contract formation: (1) a representation concerning the amount of the NSF charge then in existence and (2) a representation that this charge was a service charge. * * * [T]he latter representation creates an expectation of the mechanism used in setting the amount of the disclosed charge and to be used in setting future charges. Consequently, when the Bank, in the performance of the contract, exercised its unilateral discretion to assess a charge priced dissimilarly from other service charges and not reasonably related to costs, it violated the expectations reasonably created by this contract, even if that charge equalled in dollar amount the charge initially disclosed."

In contrast, Bank argues that the reasonable expectations of the parties are irrelevant when depositors first are apprised of the amount of the fees and then agree to open accounts: "Plaintiffs cannot agree to pay certain fees and then attack those fees as made in bad faith." Bank further argues that the Court of Appeals is correct in its statement that "the depositors' reasonable expectations about pricing are irrelevant to charges that were in effect when a depositor opened an

account and of which [the depositor] was apprised at that time." *Tolbert v. First National Bank, supra,* 96 Or App at 403.

■ Although portions of the *Best* opinion may be read to support plaintiffs' position, we agree with Bank: The expectations of depositors are irrelevant if they have agreed to the NSF fees charged by the bank. As discussed above, the *Best* court analyzed the reasonable expectations of the parties only after determining that it could not assume the existence of an agreement. Although "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement," Restatement (Second) of Contracts § 205 (1981), that duty does not extend to the *formation* of the contract.[4] *See id.* at 100, *comment c* (section 205 of the Restatement "does not deal with good faith in the formation of a contract"); 1 Farnsworth, Contracts 312, § 3.26a (1990) (no duty of good faith in precontractual negotiation). *Cf. Sheets v. Knight,* 308 Or 220, 232-33, 779 P2d 1000 (1989) (recognizing that duty of good faith is imposed in the performance of every contract).

In *Best,* this court held that depositors were entitled to assume that the bank would price *unknown* NSF fees in the same manner as they priced other *known* service charges, and that, because the bank established the known charges by cost-plus pricing, it would use cost-plus pricing to set the unknown charges. *Best v. U.S. National Bank, supra,* 303 Or at 565. As the portion of the *Best* opinion quoted above suggests, *Best* goes through a series of inferences to arrive at that conclusion. Yet, the "reasonable expectations" analysis in *Best* was necessary only because the NSF fees were not agreed to by the depositors.

In this case, there is uncontroverted evidence that the depositors *did* agree to the specific NSF fees charged by Bank. As noted above, if a potential depositor did not agree to the terms offered by Bank, no account was opened. In the

---

[4] This is not to say that there are no constraints on a party's behavior in the negotiation and formation of a contract. The doctrine of unconscionability, for example, is "assessed as of the time of contract formation" and "applies to contract terms rather than to contract performance." *Best v. U.S. National Bank,* 303 Or 557, 739 P2d 554 (1987). "Unconscionability is a legal issue that must be assessed as of the time of contract formation." *Id.*

context of contract formation, when there is an agreement after full disclosure, the depositors' expectations are irrelevant. Agreement after full disclosure is the critical difference between this case and *Best*.[5]

■ ■    The Court of Appeals distinguished between the terms agreed to by the parties at the time accounts were opened and the later changes in Bank's NSF fees:

> "We do not agree with [Bank] that its revised charges are also beyond the reach of *Best*. Although [Bank] provided customers with periodic information about the revisions, we understand *Best* to mean that the obligation of good faith arises in connection with the unilateral fixing of charges after the parties have reached an original agreement. That obligation is not eliminated by the facts that [Bank] notified its depositors about increases in the charges and that the depositors had the ability to terminate their accounts after receiving the notification. Good faith is required in the performance of the contract and the exercise of discretion under it, and it is immaterial that a party could terminate the contract if it were dissatisfied with the way in which the other exercises its discretion. We also agree with plaintiffs, for essentially the same reasons as those stated in *Best*, that there are genuine issues of material fact about whether defendant acted in good faith in setting the revised charges."
> *Tolbert v. First National Bank, supra*, 96 Or App at 403.

The Court of Appeals' statement of the law is correct — good faith is required in the performance of the contract and the exercise of discretion under it. *See generally U.S. National Bank v. Boge*, 311 Or 550, 556-68, 814 P2d 1082 (1991) (discussing obligation of good faith and citing cases). However, as discussed below, there is no genuine issue of material fact regarding whether Bank acted in good faith, in the circumstances of this case.

The contract in this case is not unusual in that it explicitly granted one party the right to exercise its discretion regarding one aspect of the performance and enforcement of the contract. In changing the amount of the NSF fees, Bank enforced a right specifically granted to it under the contract.

---

[5] Although the Court of Appeals' holding suggests that disclosure of the NSF fees are sufficient to make the parties' expectations irrelevant, it is disclosure *together with* agreement to the contract terms that takes this case out of the *Best* holding.

Because the exercise of that right was pursuant to Bank's unilateral discretion, the good faith obligation discussed in *Best* applies. Whether any changes in the NSF fees were determined in good faith, therefore, "should be decided by the *reasonable* contractual expectations of the parties." *Best v. U.S. National Bank, supra*, 303 Or at 565. (Emphasis added.)

■  We emphasize that it is only the objectively reasonable expectations of parties that will be examined in determining whether the obligation of good faith has been met.[6] In the context of this case — when (1) the parties agree to (and their contract provides for) a unilateral exercise of discretion regarding changes in one of the contract terms, and (2) the discretion is exercised after prior notice — we hold as a matter of law that the parties' reasonable expectations have been met.

On a motion for summary judgment, the moving party has the burden of establishing that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. *Seeborg v. General Motors Corp.*, 284 Or 695, 699, 588 P2d 1100 (1978). "In considering whether to grant a motion for summary judgment, the court, generally, must draw all inferences of fact from the depositions and affidavits against the moving party and in favor of the party opposing the motion." *Welch v. Bancorp Management Services*, 296 Or 208, 218, 675 P2d 172 (1983).

The trial court granted summary judgment, finding that there was no genuine issue as to any material fact and that Bank was entitled to a judgment as a matter of law. The evidence before the trial court at the time it granted summary judgment was that Bank "always advised the customers in advance of what [any modified NSF fees] would be." Further,

---

[6] We note that it is the common law "objective" good faith standard which is applicable in this case. The Uniform Commercial Code's "subjective" good faith standard is not at issue here. *See U.S. National Bank v. Boge*, 311 Or 550, 558, 814 P2d 1082 (1991) (In the context of ORS chapter 79 (UCC Article 9), the UCC "subjective" good faith standard displaces common law "objective" standard, but the "subjective" standard does *not* necessarily displace the common law "objective" standard in the context of other commercial transactions.). As we observed in *Boge*, the UCC and its definitions do not apply to the fee contract between a bank and its customer. *Id.* ("Nothing in ORS chapter 74 [UCC Article 4] addresses the limitations on a bank's discretion to set NSF fees.").

an affidavit provided with Bank's motion for summary judgment stated that "from time to time, [plaintiffs] were reinformed by written 'mailers' of the amount and method of calculating services [*sic*] charges for NSF checks."

Unlike the situation in *Best*, where the depositors were aware of the pricing mechanism for some service charges, and were entitled reasonably to expect that similar charges would be priced accordingly, in this case there is no evidence that depositors were aware of any particular pricing formula. Accordingly, it would be unreasonable for depositors to have any expectation that changes in NSF fees would be pursuant to any particular formula.

Applying the above principles, we are left with the following framework for our decision in this case: If there was no genuine issue of fact before the trial court regarding whether (1) depositors agreed to a unilateral exercise of discretion regarding changes in the amount of the NSF fee, and (2) Bank changed the amount of the NSF fee after notice to depositors, then summary judgment was appropriate.

■ The uncontroverted evidence before the trial court on summary judgment in this case was that: (1) the depositors initially agreed that Bank could change the amount of the NSF fees in its unilateral discretion; (2) Bank's practice was to inform depositors of future changes to the NSF fees before such changes became effective; and (3) plaintiffs continued to maintain their accounts with Bank and, in some cases, even continued to write NSF checks after Bank informed them of the changes. No inference available to plaintiffs (other than flat disbelief, which is not an inference that plaintiffs may invoke on summary judgment) creates an issue of fact as to these pivotal circumstances. Based on this record, any *reasonable* expectations held by the depositors were met by Bank's procedures. As a matter of law, Bank acted in good faith in its treatment of the NSF fees; there was no issue regarding any material fact, and Bank was entitled to a judgment as a matter of law. The trial court correctly granted summary judgment in favor of Bank.[7]

---

[7] In the Court of Appeals, Bank argued that if the obligation of good faith is applicable, the reasonable expectations of the parties must be ascertained. Because the expectations of members of the plaintiff class will vary, Bank argued, the class should be decertified. Bank based its argument on ORCP 32 B(3), which provides, in

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is affirmed.

---

part, that a class action is inappropriate if "the court finds it likely that final determination of the action will require separate adjudications of the claims of numerous members of the class, unless the separate adjudications relate primarily to the calculation of damages."

Plaintiffs responded that the Court of Appeals had no jurisdiction to decide the decertification issue, as Bank had not cross-appealed. Citing the trial court's letter opinion in *Best* on remand (allowing that case to continue as a class action), and other sources, plaintiffs argued that the reasonable expectations of the plaintiff class as a whole were relevant, and that that determination could be made in a class action. Plaintiffs also argued that the decision to certify a class is a decision for the trial court that should be disturbed only upon a showing of an abuse of discretion.

The Court of Appeals reasoned:

"[T]he conclusions that we have reached may necessitate many separate adjudications regarding the charges that were in effect when individual class members opened their accounts and whether those charges or revised ones were assessed against them. We nevertheless conclude that we cannot or should not decertify the class in this appeal. Assuming that we could do so, despite [Bank's] failure to cross-appeal, we think that the question is one that the trial court would be in a better position to consider on remand than we are. *See* ORCP 32C(1)." *Tolbert v. First National Bank, supra,* 96 Or App at 404.

We need not and do not address the decertification issue. Because we affirm the trial court's grant of summary judgment in favor of Bank, there is no need to remand this case. Accordingly, whether separate adjudications *would* be necessary at trial is a purely hypothetical question and one that we need not decide.