Argued and submitted August 20, 2020, affirmed December 8, 2021, petition for review denied April 7, 2022 (369 Or 507)

HAYES OYSTER COMPANY,
*Plaintiff-Appellant,*

*v.*

DEPARTMENT OF ENVIRONMENTAL QUALITY
and Richard Whitman,
in his official capacity as its Director,
*Defendants-Respondents.*

Tillamook County Circuit Court
17CV19059; A171318

504 P3d 15

The Oregon Department of Environmental Quality (DEQ) issued a total maximum daily load (TMDL) for the Tillamook Bay Watershed in 2001. Plaintiff sought judicial review of that TMDL in 2017. On appeal, plaintiff challenges the trial court's conclusion that judicial review of a final order under the APA was unavailable, the trial court's granting of DEQ's motion for summary judgment as to plaintiff's claim for public nuisance, and the trial court's granting of DEQ's motions for summary judgment on plaintiff's claims for a declaratory judgment and direction to compel DEQ to finalize the TMDL. *Held*: Plaintiff's claim under ORS 183.484 of the APA was untimely, as the 60-day period in which to file a petition for judicial review began in 2001 and had expired. Similarly, plaintiff knew or should have known of the TMDL and the alleged injury prior to May 2007, making plaintiff's claim to compel agency action under ORS 183.490, filed in May 2017, untimely. Finally, the applicable statutes of limitations barred plaintiff's remaining claims of public nuisance and for a declaratory judgment. For those reasons, the trial court did not err in granting summary judgment.

Affirmed.

Mari Garric Trevino, Judge.

Thomas R. Benke argued the cause and filed the briefs for appellant.

Jona J. Maukonen, Assistant Attorney General, argued the cause for respondents. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeVore, Presiding Judge, and DeHoog, Judge, and Mooney, Judge.

DeVORE, P. J.

Affirmed.

**DeVORE, P. J.**

The Oregon Department of Environmental Quality (DEQ) issued a total maximum daily load (TMDL) for the Tillamook Bay Watershed in 2001. A TMDL is the calculation of the maximum amount of a pollutant allowed to enter a waterbody so that the waterbody will meet and continue to meet water quality standards for particular pollutants. Plaintiff, which owns an oyster harvesting operation in the Tillamook Bay, sought judicial review of that TMDL in 2017. After earlier motions failed, the trial court granted summary judgment for DEQ on several grounds.

Plaintiff appeals, broadly arguing that the fecal coliform bacteria levels permitted in the TMDL violate the federal Clean Water Act, 33 USC § 1313, because they were not calculated with the goal of restoring shellfish harvesting in certain areas of the Tillamook Bay. We conclude, however, that plaintiff's claims are time barred. Accordingly, the trial court did not err when it denied in part and granted in part the parties' first cross-motions for summary judgment and when it granted DEQ's second motion for summary judgment. We affirm.

When reviewing a trial court's grant of summary judgment, we view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the nonmoving party, here, plaintiff. *Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997). Plaintiff's claims arise from its challenge to bacteria pollution limits set by DEQ in its Tillamook Bay Watershed TMDL, which, as noted, has been in effect since 2001.

## REGULATORY BACKGROUND

TMDLs, such the Tillamook Bay Watershed TMDL, are a part of a multistep process required by the Clean Water Act to develop "comprehensive programs for preventing, reducing, or eliminating the pollution of" the state's navigable waters. 33 USC § 1252; *see also* OAR 340-042-0025 (policy and purposes of TMDLs). The goal of a TMDL is to achieve previously established "water quality standards" (WQS), which the state has set to identify the desired uses for a waterbody and the amount of pollution

that would impair those uses. 33 USC § 1313(a) to (c); 40 CFR § 130.3; ORS 468B.048. As noted, a TMDL identifies the amount of pollution, or load, a waterbody can have without exceeding the WQS. A TMDL allocates that load for particular pollutants among natural background sources, known as nonpoint sources, of a pollutant (load allocations or LAs) and specific point sources of pollution (wasteload allocations or WLAs)—with a margin of safety taking into account any uncertainty. OAR 340-042-0040. In other words, a TMDL is the maximum amount of a pollutant allowed to enter a waterbody so that the waterbody will meet and continue to meet water quality standards for that pollutant. 40 CFR § 130.7(c); EPA, *Overview of Total Maximum Daily Loads (TMDLs)* (July 29, 2020), *available at* https://www.epa.gov/tmdl/overview-total-maximum-daily-loads-tmdls#1 [https://perma.cc/4NBG-ABAM] (accessed September 7, 2021). A TMDL may also include an element known as a Water Quality Management Plan (WQMP), which "provides the framework of management strategies to attain and maintain water quality standards." OAR 340-042-0040(l); *see also* 40 CFR § 130.6. As with WQS, the state must submit TMDLs to the EPA for approval. 33 USC § 1313(d)(2).

PROCEEDINGS

Plaintiff owns about 600 hundred acres of oyster plats in the Tillamook Bay and has been harvesting oysters in the area since the 1920s.

The Oregon Department of Agriculture (ODA) regulates commercial oyster harvesting in the area through its Tillamook Management Plan for Commercial Shellfish Harvesting (Management Plan), which is designed to comply with the U.S. Food and Drug Administration's National Shellfish Sanitation Program (NSSP) standards for commercial shellfish harvesting. The NSSP sets standards for fecal coliform bacteria levels in shellfish-harvesting waters. Fecal coliform bacteria are microscopic organisms in animal waste that can cause illness in humans. As a part of ODA's Management Plan, a portion of plaintiff's acreage is in a designated "Upper Bay Prohibited Area," where commercial

oyster harvesting is prohibited year round due to poor water quality, and another portion of plaintiff's acreage is in a "conditionally approved area," where oyster harvesting is intermittently prohibited depending on water quality levels.

Consistent with the state's duties under the Clean Water Act, 33 USC § 1313(d)(1)(C), in 2001, DEQ established a TMDL for fecal coliform bacteria in the Tillamook Bay. When DEQ finalized the Tillamook Bay TMDL, it had not yet established the regulatory framework that now sets forth the step-by-step process for issuing TMDLs as orders. *See* OAR 340-042-0025 to 340-042-0080 (detailing DEQ's process for developing and issuing TMDLs after December 2002). DEQ lacks definitive evidence that it had complied in 2001 with all steps of the TMDL process that was later established in 2002—such as having the DEQ director sign a final version or notifying all necessary parties following EPA approval of the final TMDL. However, the parties agree that the draft copy sent to and approved by the EPA in July 2001 is effectively the same, absent formatting changes, as the Tillamook Bay TMDL that has been in effect since then. *See* OAR 340-042-0060 (detailing requirements for issuing a TMDL).

Plaintiff filed the complaint in this case in May 2017. The core of plaintiff's challenge to the Tillamook Bay TMDL is that the WLAs and LAs are "not reasonably calculated to attain compliance with the water quality standard for *all* shellfish growing waters within Tillamook Bay" and thus violate the state's duties under the CWA. (Emphasis in plaintiff's second amended complaint.) Plaintiff argues that the load allocations did not, and continue not to, properly take into account pollution discharges from dairy farms and thus the WQMP does not include sufficient strategies to reduce the resulting bacteria's negative effect on water quality and oyster harvesting in the bay.

In plaintiff's second amended complaint, plaintiff asserted a claim for public nuisance, arguing that the TMDL was a "rule" under ORS 183.310(9) and thus subject to collateral tort claims, and, in the alternative, a claim for

judicial review of an agency "order" in an other than contested case under ORS 183.480[1] and ORS 183.484.[2]

Plaintiff and DEQ filed cross-motions for summary judgment. As to plaintiff's public nuisance claim, DEQ argued that the claim was barred by the jurisdictional exclusivity provision of the APA for orders, ORS 183.480(3), and time-barred by the Oregon Tort Claims Act's two-year statute of limitations. As to plaintiff's APA claim, DEQ agreed with plaintiff that the TMDL was a "final order," but argued that plaintiff failed to file the claim within 60 days of the order being served on the relevant parties, as required by ORS 183.484(2). Plaintiff responded that its public nuisance claim was not subject to APA exclusivity if the court determined that the TMDL was a "*de facto* rule change" and that the 60-day limitation on its APA claim had never begun, because DEQ presented no definitive evidence that it served the final TMDL on anyone in 2001.

The trial court denied both parties' motions for summary judgment in part and granted DEQ's motion for summary judgment as to plaintiff's nuisance claim. The trial court determined that the TMDL was not a "final order" as required to take jurisdiction under the APA because the 2001 TMDL did not seem to fully comport with the process for adopting a TMDL as established in 2002. That is, the trial court reasoned that the TMDL was not a "final order" because it was not "directed to a named person or persons" as required by the definition of "order"; it was not signed by DEQ's director; and DEQ did not have copies of the final TMDL as mailed to the necessary parties as required by the agency's 2002 regulations. Initially, the trial court concluded that the TMDL remained a "draft" that could not be time-barred as a "final order" under the APA. Later, because the trial court concluded that the TMDL was a nonfinal order and was "clearly not a 'rule,'" the court also concluded that

---

[1] Under ORS 183.480, "any person adversely affected or aggrieved by an order or any party to an agency proceeding is entitled to judicial review of a final order * * *."

[2] Under ORS 183.484, "[j]urisdiction for judicial review of orders other than contested cases is conferred upon the * * * circuit court for the county in which the petitioner resides."

the APA's exclusivity provision as to review of orders barred plaintiff's public nuisance claim.[3]

Plaintiff subsequently filed a third amended complaint, asserting a declaratory judgment claim requesting that the court declare the WLAs invalid on the basis that plaintiff would suffer substantial and irreparable harm if interlocutory relief was not granted in accordance with the APA, ORS 183.480(3).[4] Plaintiff also asserted a claim under ORS 183.490 to compel DEQ to issue a final TMDL and enforce the LAs established for dairy farms in the 2001 TMDL.[5]

Both parties again filed cross-motions for summary judgment. The trial court granted DEQ's motion for summary judgment and dismissed both of plaintiff's claims. The trial court concluded that it lacked jurisdiction to review plaintiff's declaratory judgment claim, as neither the Declaratory Judgments Act, ORS 28.010 to 28.160, nor the interlocutory relief provision of the APA, ORS 183.480(3), provided independent bases for jurisdiction to judicially review an agency action. The trial court also determined that plaintiff's claim to compel DEQ action was time barred by the 10-year statute of limitations contained in ORS 12.140, because the uncontested facts showed that "[p]laintiff has clearly been aware of its complete inability to use and reduction in use of some of its Tillamook Bay oyster

---

[3] Because it is not necessary to our decision, we do not address the issue whether exclusivity applies to an order that was not final.

[4] On appeal, DEQ argues that because plaintiff did not reassert its claim for judicial review under ORS 183.484 in its third amended complaint, plaintiff abandoned that claim and cannot appeal the trial court's conclusion that the TMDL was not a "final order" for purposes of review under ORS 183.484.

Upon review of the record, we do not find this to be an occasion where a party relinquished a claim because it voluntarily initiated an amendment of its pleadings that omitted the claim. *See Propp v. Long*, 313 Or 218, 222-23, 831 P2d 685 (1992) (explaining a superseded complaint). Rather, plaintiff omitted its claim for judicial review of a final order under ORS 183.484 in an attempt to comply with the court's intervening conclusion that the TMDL was not a "final order," and the parties and the court appear to have understood it as such. *See Olson v. Chuck et al.*, 199 Or 90, 98-99, 259 P2d 128 (1953) (evaluating whether a complaint was superseded in light of the parties' and trial court's intentions).

[5] Under ORS 183.490, "[t]he court may, upon petition as described in ORS 183.484, compel an agency to act where it has unlawfully refused to act or make a decision or unreasonably delayed taking action or making a decision."

plats since the early 2000s and that implementation of the Tillamook Bay TMDL (whether final or not) did not remedy this situation."

On appeal, plaintiff challenges the trial court's conclusion that judicial review of a final order under the APA was unavailable, the trial court's granting of DEQ's motion for summary judgment as to plaintiff's claim for public nuisance, and the trial court's granting of DEQ's motions for summary judgment on plaintiff's claims for a declaratory judgment and direction to compel DEQ to finalize the TMDL. First, plaintiff assigns error to the trial court's conclusion that the Tillamook Bay TMDL is a nonfinal order. That is, as we understand the argument, plaintiff contends that the trial court erred in precluding it from pursuing judicial review under the APA as a final order in an other than contested case. Second, plaintiff argues that the trial court erred in concluding that the TMDL was also not a "rule" subject to collateral attack through its claim for public nuisance. Third, plaintiff argues that the trial court erred in granting DEQ's motion for summary judgment on plaintiff's claim for declaratory judgment, asserting that the trial court did not lack jurisdiction to review the claim. Fourth, plaintiff argues that the trial court erred in granting DEQ's motion for summary judgment on its claim to compel DEQ action, arguing that the claim was not time-barred by any statute of limitations.

DEQ agrees with plaintiff initially that the TMDL should be viewed as a "final order," but argues that the trial court correctly precluded review under the APA because plaintiff did not initiate this action within 60 days of DEQ's notice to the necessary parties. DEQ renews its arguments that the remainder of plaintiff's claims—for public nuisance, for declaratory relief, and to compel agency action—are time-barred by the claims' respective statutes of limitations.

As to plaintiff's first assignment of error, we conclude that the trial court erred to the extent that it found a genuine issue of material fact as to whether DEQ delivered a copy of the final TMDL to the necessary parties. However, because we determine that there is not a triable issue as to whether plaintiff failed to file its suit within the

APA's 60-day deadline, we ultimately conclude that the trial court did not err in precluding plaintiff's claim under ORS 183.484. Similarly, we conclude that plaintiff's remaining claims are also time-barred.

CLAIM UNDER ORS 183.484

In response to plaintiff's first assignment of error, DEQ renews its argument, among others, that the trial court lacked jurisdiction over plaintiff's petition for judicial review of the TMDL as a final order in an other than contested case because plaintiff's claim was untimely. Plaintiff argues that the 60-day period for bringing claims under ORS 183.484 never started where DEQ could not produce definitive evidence that it had ever notified "the parties to a proceeding of a final order by delivering or mailing a copy of the order." ORS 183.470(3).

Petitions for judicial review under ORS 183.484 must be filed within 60 days following the date the order is served. ORS 183.484(2). An order is considered to be served when the agency delivers or mails the final order to "the parties to a proceeding of a final order." ORS 183.470(3). Complying with the 60-day deadline is a jurisdictional requirement for judicial review of an agency action. *Ososke v. DMV*, 320 Or 657, 661, 891 P2d 633 (1995); *G.A.S.P. v. Environmental Quality Commission*, 201 Or App 362, 366, 118 P3d 831 (2005).

DEQ is entitled to summary judgment on the basis that plaintiff did not timely file its claim if there is no genuine issue as to whether plaintiff failed to file its claim within 60 days of the final TMDL being served upon a necessary party. There is not a genuine issue of material fact (triable issue) where no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment. *Jones*, 325 Or at 407-08. The determination of whether there is a genuine issue of material fact is made on the evidence submitted by both parties. *Flaningam v. Flaningam*, 145 Or App 432, 435, 929 P2d 1084 (1996). When evaluating the evidence, uncontradicted testimony cannot be controverted on summary judgment simply by asserting that it should not be believed.

*Perry v. Rein*, 215 Or App 113, 126, 168 P3d 1163 (2007). In other words, an adverse party cannot create a genuine issue of material fact by relying on the "flat disbelief" of presented testimony to establish an alternate version of what transpired. *Tolbert v. First National Bank*, 312 Or 485, 823 P2d 965 (1991); *Worman v. Columbia County*, 223 Or App 223, 233, 195 P3d 414 (2008).

Plaintiff argues that the evidence supports its contention that the 60-day deadline in ORS 183.484 does not apply in this case for two reasons—first, DEQ could not present definitive copies of the final version of the TMDLs it sent to any necessary party in accordance with ORS 183.470, so the 60-day period never began; and, second, plaintiff was not given that notice and, regardless of statutory requirements, the Due Process Clause of the Fourteenth Amendment to the United States required that plaintiff itself be formally notified that the final TMDL had been issued before the 60-day period ended.

Plaintiff's first argument relates to the testimony of Eric Nigg, DEQ's Coordinator for the North Coast Basin, who was tasked with developing the Tillamook Bay TMDL. In a deposition, he testified that the department could not find a copy of the final TMDL it had sent to the parties involved in creating the TMDL. In a declaration, however, Nigg stated that agency practice at that time was to send notice of final TMDLs to all affected point-source permittees under the National Pollutant Discharge Elimination System (NPDES), nonpoint source designated management agencies (DMAs) identified in the TMDL, and persons who provided formal public comment on the draft TMDL. Nigg was "confident that DEQ sent notice of the final TMDL order" to each of those parties, despite DEQ's inability to locate copies of the letters over 15 years later.

In response, plaintiff submitted a declaration from its owner, Jesse Hayes, stating that he did not personally receive a copy of DEQ's June 2001 Tillamook Bay TMDL or a letter from DEQ's director sent to commentors in June 2001.

After evaluating that evidence submitted by both parties, we determine that there was not a triable issue as

to whether DEQ delivered final notice of the TMDL; that is, the only permissible inference from the evidence presented was that DEQ did deliver such notice. DEQ had a duty to "notify the parties to a proceeding of a final order" in order to trigger the 60-day deadline to petition for judicial review of the order. ORS 183.484(2); ORS 183.470(3). Although the "parties" to which DEQ was required to send notice of a final TMDL were not yet defined by regulation in 2001, as explained below, plaintiff was not a party.[6]

The undisputed evidence shows that plaintiff's owner knew that the TMDL process was occurring, attended at least one meeting where a draft of the TMDL was discussed, and had a copy of the draft TMDL in his possession. Yet, plaintiff's owner purposefully chose not to participate in the TMDL process because he believed that his "voice is not heard" by DEQ; he chose not to read a copy of the TMDL because he believed doing so was "not going to help [his] cause"; and he chose not to submit a formal comment on the draft TMDL.

Where plaintiff is not an entity directly regulated by the effluent limits set forth in the TMDL, such as the listed point sources and DMAs, and did not alert DEQ that it wanted to be involved in the creation of the TMDL by submitting a formal comment, it is not a "party" that DEQ was required to formally notify when it issued the final version of the TMDL. Therefore, plaintiff's evidence that its owner did not receive formal notice of the final issuance of the TMDL is immaterial—that is, it does not create an issue as to whether DEQ mailed notice of the final TMDL to the parties to the proceeding as required by ORS 183.470.

To reach a different conclusion, plaintiff and the trial court relied on the inference that a reasonable juror could assume that the agency would have kept a copy of such notice if it existed, such that the absence of that definitive

---

[6] In 2002, DEQ adopted regulations requiring the department to notify "all affected NPDES permittees, nonpoint source DMAs identified in the TMDL and persons who provided formal public comment on the draft TMDL that the order has been issued and the summary of responses to comments is available" within 20 days after the Director of DEQ signs the order. OAR 340-042-0060(4).

record could indicate that notice of the final TMDL was never sent to the necessary parties. That inference, however, is not one that a reasonable juror would be entitled to make in light of DEQ's established retention period for documents relating to the TMDL process. A state agency is required to "destroy public records which have met the terms and conditions of their scheduled retention period." OAR 166-300-0010. The retention period for TMDL project records is "15 years after waste load locations [*sic*] are established." Department of Environmental Quality, Records Retention Schedule 2008-0009, 118, *available at* https://web.archive.org/web/20161224064707/http:/sos.oregon.gov/archives/Documents/recordsmgmt/sched/schedule-deq.pdf (accessed October 22, 2021). The retention periods for state agency records are both a minimum retention and a maximum retention period. OAR 166-030-0026(2).

In this case, the TMDL was approved by the EPA in July 2001. Nigg declared, as the individual in charge of the TMDL process in 2001, that he was "confident" DEQ followed its normal process of sending the final version to the necessary parties. Plaintiff filed its petition for review in 2017. From that evidence, it is not reasonable to infer that the records relating to the 2001 TMDL would have been maintained past the point sometime in 2016 when DEQ was required to destroy such records.

Because it is not reasonable to rely on the absence of the record to infer that it never existed, the only remaining evidence available to show that DEQ never sent the required notice would be an inference that Nigg was not credible when he testified that he was confident that DEQ had sent such notice. Flat disbelief of presented testimony, however, is not enough to create a genuine issue of material fact. *Tolbert*, 312 Or at 495; *Worman*, 223 Or App at 233. On this record, the only evidence regarding whether DEQ triggered the 60-day period by failing to deliver final notice to all parties is Nigg's testimony that DEQ *did* send such notice in 2001. As a consequence, the date of plaintiff's petition for review in May 2017 was well beyond the 60-day jurisdictional requirement for review of an agency action in an other than contested case.

As for plaintiff's second argument, plaintiff's evidence does not create a triable issue that, under the Due Process Clause, plaintiff was a party to which DEQ must show it delivered notice of the final TMDL before the 60-day timeline expired. The implied right of notice in the Due Process Clause of the Fourteenth Amendment requires that an agency's notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Tr. Co.*, 339 US 306, 314, 70 S Ct 652, 94 L Ed 865 (1950). Plaintiff relies on that standard from *Mullane* to argue that, in addition to DEQ's statutory duty to send notice, DEQ was required to notify plaintiff of the final TMDL's substance to satisfy plaintiff's due process rights.

Plaintiff relies on *Brown v. City of Salem*, 251 Or 150, 444 P2d 936 (1968), but, as *Brown* points out, *Mullane* dealt with the notice that must be given of judicial proceedings between private parties. As with other aspects of due process, the extent of notice required by the Due Process Clause varies with the type of proceeding and the type of interest involved. *Mt. Sexton Properties v. Dept. of Rev.*, 306 Or 465, 479, 760 P2d 1320 (1988). Due process requires the fullest notice where litigation over a plaintiff's individual rights occurs, but due process does not require that every potentially affected party be notified prior to an agency's initiation of procedures established by a legislative scheme. *Id.* at 480-82.

As concerns plaintiff, the TMDL process did not equate to an adjudication over plaintiff's individual rights such that DEQ was required to give plaintiff the fullest notice. The TMDL establishes specific effluent limits and goals for named point sources, nonpoint sources, and management agencies. Plaintiff does not assert that it falls into any of those categories. Instead, plaintiff contends that it was entitled to notice of the general dilution ratio used to calculate the effluent limitations for those particular parties because of the potential indirect effects the effluent limits could have on plaintiff's property. Although DEQ does not claim to have sent plaintiff formal notice of the final

TMDL, as described above, the evidence shows that plaintiff was aware that the TMDL process was occurring, was aware of bacterial contamination issues, was given a draft of the TMDL, and still chose not to participate more extensively in the TMDL process.

Because plaintiff has not cited to us any decisions by the United States Supreme Court or the Oregon Supreme Court that support the conclusion that all potentially affected persons are constitutionally entitled to individualized notice of the general substance of final orders directed at other entities, we decline to conclude that DEQ failed to give plaintiff adequate notice under the above facts. As concerns plaintiff in this circumstance, due process did not require more of the agency; due process does not present a triable issue.

Rejecting both of plaintiff's arguments, we conclude that plaintiff's petition for judicial review was untimely under ORS 183.484. The trial court lacked authority to hear the claim. Although that is a different reason than that on which the trial court relied, the trial court correctly declined to consider plaintiff's petition for judicial review of the TMDL as an order in an other than contested case.[7]

## CLAIM UNDER ORS 183.490

In its fourth assignment, plaintiff argues that the trial court erred in concluding that *any* statute of limitations applied to plaintiff's claim to compel agency action under ORS 183.490. We review that assignment out of order because our conclusion that plaintiff's claim to compel DEQ agency under ORS 183.490 was time-barred simplifies the resolution of plaintiff's second and third assignments of error. We review whether the trial court applied the correct source of law for the applicable statute of limitations for errors of law. *Waterfront Pearl Condo. Owners v. Waterfront Pearl*, 313 Or App 74, 77, 494 P3d 367 (2021).

---

[7] Because we conclude that plaintiff's claim was untimely, we do not reach the similarly foundational questions as to whether a TMDL has the requisite finality under ORS 183.310(6)(b), a question left open by *Hawes v. State of Oregon*, 203 Or App 255, 265 n 8, 125 P3d 778 (2005), or whether the TMDL in this case complies with the statutory definition of an "order" as defined in ORS 183.310(6)(a).

Plaintiff asserted a claim under ORS 183.490 asking the court to compel DEQ to issue and enforce a zero-load allocation for dairy farms in the Tillamook Bay TMDL. Under ORS 183.490,

> "[t]he court may, upon petition as described in ORS 183.484, compel an agency to act where it has unlawfully refused to act or make a decision or unreasonably delayed taking action or making a decision."

The APA allows a court to compel agency action under ORS 183.490 as a remedy when an "action or suit [is] maintained" as to the validity of an agency order. ORS 183.480(3).

Oregon law provides that "[a]ctions shall only be commenced within the periods prescribed in this chapter, after the cause of action shall have accrued, except where a different limitation is prescribed by statute." ORS 12.010. Where a cause of action is not encompassed by a specific statute of limitations, the residual statute of limitations provides that the action must be commenced within 10 years. ORS 12.140; *see also State ex rel Adult and Fam. Ser. v. Bradley*, 58 Or App 663, 670, 650 P2d 91 (1982), *aff'd*, 295 Or 216, 666 P2d 249 (1983). Where plaintiff's claim is of the sort that ORS 183.490 and ORS 183.480(3) contemplate as an "action," and plaintiff presents no other characterization, we are not convinced that we should abandon the general presumption that the residual statute of limitations applies to actions for which the legislature has not otherwise prescribed a time limitation.

If a 10-year statute of limitations is held to apply, plaintiff next argues that the discovery rule should extend such time. Under a "discovery rule," the statute of limitations is "deemed to have commenced from the earlier of two possible events: (1) the date of the plaintiff's actual discovery of injury; or (2) the date when a person exercising reasonable care should have discovered the injury, including learning facts that an inquiry would have disclosed." *Rice v. Rabb*, 354 Or 721, 725, 320 P3d 554 (2014) (internal quotations marks omitted). The rule applies an objective standard, evaluating "how a reasonable person of ordinary prudence would have acted in the same or a similar situation." *Kaseberg v. Davis Wright Tremaine, LLP*, 351 Or 270, 278,

265 P3d 777 (2011). "The statute of limitations begins to run when the plaintiff knows or, in the exercise of reasonable care, should have known facts that would make a reasonable person aware of a substantial possibility that each of the elements in a claim exists." *Id.* Among those elements, the limitations period begins to run when the plaintiff discovers, or a reasonable person should have discovered, the defendant's causal role. *T. R. v. Boy Scouts of America*, 344 Or 282, 292, 181 P3d 758, *cert den*, 555 US 825 (2008).

Because the catch-all statute, ORS 12.140, falls within the scope of ORS 12.010,[8] we regard the discovery rule applicable. *See Rice*, 354 Or at 728 (applying discovery rule to ORS 12.080(4) because that statute falls under the purview of ORS 12.010). On summary judgment, we examine the evidence in the light most favorable to plaintiff, giving plaintiff the benefit of all reasonable inferences, to determine whether there is a genuine issue of material fact as to whether "plaintiff knew or should have known the critical facts at a specified time and did not file suit within the requisite time thereafter." *T. R.*, 344 Or at 296.

On this record, plaintiff knew or should have known of the relevant facts more than 10 years before the filing of plaintiff's complaint. Plaintiff's owner testified that the farm had been prohibited from harvesting oysters due to fecal coliform bacteria contamination since at least the 1970s. He agreed that he had attended a meeting hosted by DEQ to discuss the draft 2001 TMDL and had a draft TMDL in his possession from a DEQ meeting. DEQ records showed that "Jess Hayes," plaintiff's owner, was also mailed a draft of the TMDL. Although in possession of a copy of the entire draft TMDL, plaintiff's owner testified that he would not have read the TMDL because "we sat through a meeting and * * * then we get the gist of the meeting and what they are saying, and we are handed [the draft TMDL]. And I would look at that, you know, I'm not going to read that. I don't need to read that. It's not going to help my cause." In

---

[8] ORS 12.010 provides:

"Actions shall only be commenced within the periods prescribed in this chapter, after the cause of action shall have accrued, except where a different limitation is prescribed by statute."

the early 2000s plaintiff's owner filed complaints with DEQ, ODA, and county commissioners "by telephone, by writing, and at meetings" regarding manure contamination near the oyster plats. The restrictions on plaintiff's oyster harvesting due to fecal coliform bacteria levels were still present in 2017 and led to plaintiff filing the underlying complaints in this case.

Plaintiff was aware of fecal coliform bacteria levels and the resulting negative effect on plaintiff's ability to harvest oysters in the Tillamook Bay for decades leading up to the 2001 Tillamook Bay TMDL. Plaintiff attended at least one meeting where the draft TMDL was discussed and was in possession of at least one draft TMDL. DEQ implemented the Tillamook Bay TMDL in 2001, which remains in effect today. Plaintiff remained aware of the bacteria pollution throughout the early 2000s, and its inability to harvest oysters from some of its plats did not change following implementation of the TMDL. Plaintiff filed the complaint in this suit in May 2017.

Based on those facts, as confirmed by the testimony of plaintiff's owner, the trial court did not err in finding, even allowing some time for plaintiff to investigate the TMDL process, that plaintiff knew or should have known that it had been allegedly injured by DEQ's implementation of the TMDL some time prior to May 2007. Therefore, plaintiff's claim to compel agency action under ORS 183.490 is barred by the residual 10-year statute of limitations.

## REMAINING CLAIMS

Plaintiff's remaining assignments of error are also time-barred. Plaintiff's second assignment of error is based on its public nuisance claim. On appeal, plaintiff does not present an argument regarding that claim's compliance with the two-year statute of limitations under the Oregon Tort Claims Act. ORS 30.275(9); *see Mark v. State Dept. of Fish and Wildlife*, 158 Or App 355, 365, 974 P2d 716, *rev den*, 329 Or 479 (1999) (applying the OTCA to a public nuisance claim).[9] Plaintiff's third assignment of error is based on its

---

[9] Plaintiff briefly suggests that its public nuisance claim is based on a "continuing tort theory." We reject that argument without further discussion.

claim for a declaratory judgment invalidating portions of the TMDL. The parties do not dispute that the same residual 10-year statute of limitations applies to that claim. We therefore reject plaintiff's second and third assignments of error without further discussion and affirm the trial court's dismissal of those claims because they are time-barred.

## CONCLUSION

In sum, DEQ gave due notice of the final TMDL; whether plaintiff was notified is not a genuine issue; the 60-day period in which to file a petition for judicial review began in 2001 and has expired, making plaintiff's claim under ORS 183.484 untimely. Similarly, plaintiff knew or should have known of the TMDL and the alleged injury sometime prior to May 2007, making plaintiff's claim to compel agency action under ORS 183.490, filed in May 2017, untimely. Finally, the applicable statutes of limitations bar plaintiff's remaining claims of public nuisance and for a declaratory judgment. For those reasons, the trial court did not err in granting summary judgment, and we affirm.

Affirmed.

---

*See Davis v. Bostick*, 282 Or 667, 673, 580 P2d 544 (1978) ("nuisance arises by definition when the conduct constituting the unreasonable invasion of the complainant's use and enjoyment of land begins").