Argued July 9, affirmed November 12, 1976

# FARMER et ux, *Appellants,*
## *v.*
# GROVES et al, *Respondents.*

555 P2d 1252

*F. P. Stager,* Salem, argued the cause for appellants. With him on the briefs was Paul Snider.

*David W. Hittle,* Salem, argued the cause for respondents. With him on the brief were Dye & Olson.

Before Denecke, Chief Justice, and McAllister, Holman and Howell, Justices.

McALLISTER, J.

## McALLISTER, J.

The plaintiffs Carl and Peggy Farmer brought this suit to rescind a land sale contract by which they agreed to purchase from the defendants, as vendors, a house and lot in Salem. Plaintiffs also sought restitution for the payments made on the contract, for taxes paid, and for the value of improvements made on the property, less the fair rental value of the house for the two years they had lived in it.

Defendants contended that plaintiffs had been in default on the contract and that defendants had rightfully declared the contract void and forfeited plaintiffs' interest in the property.

The trial court found that plaintiffs failed to prove that the work they did on the property enhanced its value or that the value of plaintiffs' payments exceeded the fair rental value of the property during the two years plaintiffs had lived there.

The plaintiffs appeal from the trial court's dismissal of their complaint with prejudice.

On May 10, 1973 the parties signed a contract obligating the plaintiffs to purchase the house and lot for $9,500 with $500 down and monthly payments of $89.86. Plaintiffs actually paid only $10 of the down payment and agreed to sign a note for the remaining $490 due in two years.

Plaintiffs made the required payments until October 1974 when they began missing payments or making only partial payments. The defendants made no serious objection for a time. Plaintiffs paid the 1973 taxes but failed to pay the real property taxes due in November 1974.

In late April 1975 defendant Wayne Olson telephoned Carl Farmer and gave the plaintiffs the option of cancelling the contract, making up the payments, or vacating the house, in which case defendants would

foreclose. He gave plaintiffs only ten days' or two weeks' notice in which to cure the delinquencies.

The plaintiffs moved out of the house on May 10, 1975. At about that time Olson saw Mrs. Farmer and asked her what they had decided to do. She said that they had decided to move and to give up the house.

Sometime later Olson drove by the house and saw that it was vacant. He found the door unlocked and some windows broken. The house was empty except for an old couch, some curtains and some roofing materials. He put a lock on the house and he and his partner then spent a month cleaning and repairing the house so that it could be rented.

On May 9, 1974 plaintiffs' attorney wrote the defendants offering to terminate the contract if defendants paid plaintiffs $500. On June 10, 1974 defendants' attorney wrote that they believed the contract had been terminated and that plaintiffs had no further rights in the property.

The contract provided that time was of the essence and also provided that in the event of late payments or of a breach by the purchasers the defendants had the option of declaring a forfeiture, accelerating the payments, or of foreclosing the contract by a suit in equity. In their affirmative defense defendants declared that they had rightfully declared a forfeiture.

The vendors' alternative remedies in the event of a default by purchasers are described in *Nygaard et ux v. Anderson,* 229 Or 323, 330-331, 366 P2d 899 (1961):

"* * * Vendors' remedies upon default by the purchaser fall into either one of two classes; (1) remedies consistent only with the affirmance of the contract, or (2) remedies consistent only with the repudiation of the contract. If the vendor seeks to recover the installments due on the contract or brings suit for specific performance or brings suit for strict foreclosure he has elected to affirm and enforce the contract. On the other hand, if he brings an action of ejectment or takes possession of the premises under circumstances indicating an intent to

deprive the purchaser of possession under the forfeiture and right of entry provision of the contract, the vendor has elected to regard the contract as no longer continuing."

A court of equity will not declare a forfeiture, although it will recognize that one has been previously accomplished. *Howard v. Jackson,* 213 Or 447, 459-460, 324 P2d 757 (1958); *Roth Develop. v. John Gen'l Contr.,* 263 Or 561, 569-570, 503 P2d 493 (1972). Courts do not favor forfeitures and such contract provisions are liberally construed against a forfeiture. *Roth Develop. v. John Gen'l Contr., supra,* 263 Or at 568. Since the defendants had several options in the event of default by purchasers the forfeiture provision is not self executing. *Morrison et al v. Kandler et ux,* 215 Or 489, 499, 334 P2d 459 (1959).

Defendants had waived the time of the essence clause of the contract by accepting, without serious complaint, the conduct of plaintiffs in making no payments or diminished payments for a six-month period. In such a case the reasonable period required for notice of a forfeiture is greater than when the defendants have not waived such provisions. *Grider v. Turnbow,* 162 Or 622, 641, 94 P2d 285 (1939). We hold that the ten days' or two weeks' notice which defendants gave was not reasonable notice under the circumstances of this case. A wrongful declaration of forfeiture allows the purchasers to effect a rescission of the contract by acquiescing in such repudiation. *Johnston v. Gilbert,* 234 Or 350, 352, 382 P2d 87 (1963); *Morrison v. Kandler, supra,* 215 Or at 498-499.

The conduct of defendants in granting plaintiffs ten days or two weeks to pay up on the contract, plus padlocking the door and writing a letter declaring plaintiffs had no further rights in the contract, constituted a declaration of forfeiture which was improper because insufficient notice was given. The defendants, in their affirmative answer, alleged that "under the terms of the Contract, Defendants declared the con-

tract null and void thereby terminating all of Plaintiffs' right and interest in the property, * * *" Plaintiffs were entitled to acquiesce in such a wrongful repudiation of the contract and thereby to rescind the contract.

In the case of a rescission plaintiffs are entitled to be returned to the status quo and to recover the payments made on the contract less the fair rental value of the premises for the time they had possession thereof. *Johnston v. Gilbert, supra,* 234 Or at 354-355.

According to the records of the escrow agent, plaintiffs paid $1,660.71 on the contract. They had also paid $10 down plus $248 in taxes, making their total payments $1,918.71.

Plaintiffs had possession of the property for at least 24 months. Dividing their total payments by 24 means that plaintiffs paid the equivalent of $79.95 per month in rent. Plaintiffs did not put on any evidence as to the reasonable rental value of the property. Defendants testified that after considerable improvements to the house they were renting it for $165 per month. On the basis of the limited evidence available, we cannot say that $79.95 per month was an unreasonable rental for this property.

Restitution is based on the theory that one party should not be unjustly enriched at the expense of another. Restatement of Restitution §1 (1937). To recover for work they did on the property plaintiffs must show that the improvements enhanced the value of the property. 92 CJS 542, Vendor and Purchaser § 544. Plaintiffs testified as to the hours they spent working on the house and the yard. Plaintiffs introduced no evidence that the value of the property was enhanced by the work that they did. We hold, as did the trial court, that plaintiffs are not entitled to restitution.

The decree is affirmed.