Argued and submitted August 18, affirmed October 20, 1980

IVERSEN, et al,
*Appellants,*
*v.*
KIGER, et al,
*Respondents.*

(No. 36066, CA 16414)

617 P2d 1386

Gordon H. Price, Molalla, argued the cause and filed the briefs for appellants.

Jules Drabkin, McMinnville, argued the cause and filed the brief for respondent Estin B. Kiger.

Wayne C. Rapp, and Wayne C. Rapp & Associates, Hillsboro, filed a brief for respondent Marian E. Scholze which was stricken for failure to comply with the Court's rules.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

BUTTLER, J.

**BUTTLER, J.**

The question in this action for strict foreclosure of a real estate contract is whether the proceeding was commenced prematurely. We conclude that it was, and affirm the judgment of the trial court dismissing plaintiff's complaint and awarding defendant Kiger attorney's fees and costs.

The contract was entered into in November, 1971, between Ralph Hansen, as seller, and defendant Kiger (and his then wife), as buyers, by the terms of which the buyer agreed to purchase the property for the total sum of $24,000, of which $4,000 was paid at the time of execution of the contract, and the balance of $20,000 was to be paid in monthly payments of not less than $125, including interest, with the full balance of principal and interest to be paid on or before December 1, 1986.

The vendor designated a bank in Newberg as the collection agent for payments under the contract, and defendant Kiger made his payments to the bank regularly during the years 1972 and 1973, plus some extra payments. During 1974, the payments were made less regularly, and in 1975 and 1976 they were quite sporadic.

In 1973, the original vendor, Ralph Hansen, died and plaintiffs became the successors in interest to his rights under the contract. It is clear that although the contract contained a standard "time essence" clause, the vendors had waived it by accepting late and sporadic payments by the vendee. In July of 1976 plaintiffs left a note in defendant Kiger's mailbox, in response to which defendant Kiger telephoned plaintiff Harold Iversen. At that time plaintiffs did not think that defendant Kiger was current on his contract payments, but defendant explained that his records indicated he was ahead of the schedule, even though he had not been making payments regularly, because he had made many extra payments which were to be applied on future payments, rather than as against principal. He told plaintiffs he would supply

them with his payment records, and then asked plaintiffs to let him know if they did not think it was correct. Defendant supplied those records and heard nothing further from them. At trial, plaintiff Harold Iversen testified that at that time he was satisfied that defendant Kiger was ahead on his contract payments.

Notwithstanding the parties' agreement in 1976 that defendant Kiger was ahead on his contract payments, the bank records introduced at trial showed that the bank, as collection agent for the vendors, applied all payments from October, 1975, until the closing of the collection account in December, 1978, to interest. Apparently, the bank had not been informed of the informal understanding between the parties with respect to the application of extra payments. Nothing further happened until, according to plaintiffs, they sent a handwritten letter dated July 10, 1978, to defendant Kiger demanding that the contract be brought current. Defendant denied receiving the letter. However, on August 4, 1978, defendant Kiger paid $375; another payment of $125 was made in September, but no payments were made in October and November.

Sometime during December, defendant Kiger sold his vendee's interest under the contract to defendant and to cross-complainant Scholze, and during that month was in the process of moving from the property to Prineville. By letter dated December 11, 1978, plaintiffs' counsel wrote defendant Kiger at his Newberg address demanding that "all payments due under the contract be brought current within ten days, and that the terms of the contract be performed strictly thereafter." The letter was forwarded to defendant Kiger by his purchaser, but defendant Kiger did not receive it until the week of January 8, 1979, at his Prineville address.[1] In the meantime, on December 15, 1978, defendant Kiger made a payment of $125 to the

---

[1] It appears that defendant Kiger did not provide the post office with his new address, and his mail was forwarded by his purchaser. It may well be, as is plaintiffs' contention, that Kiger had an obligation to advise them of his address, but our disposition of the case makes it unnecessary to address that question.

bank, which was accepted without comment, and on December 26, 1978, the plaintiffs closed the collection account but did not advise defendant Kiger of that fact. At that time plaintiffs were given the bank's records showing the status of the contract account.

Defendant Kiger testified that after receiving the December 11, 1978, letter he tried to contact Mr. Iversen by telephone, and when unable to do so, sent a letter to plaintiffs which was returned because it was misaddressed. On January 14, 1979, defendant Kiger sent a letter to plaintiffs' attorney stating that if the attorney would let the defendant know how much was needed to bring the contract current and where to send the payments, he would do everything in his power to bring the contract current. The original of that letter was introduced in evidence, with a handwritten notation at the top, "received February 8, 1979," two days after the foreclosure complaint was filed, but before defendant Kiger was served with process. There is no evidence as to the accuracy of that notation or when and by whom it was made.

Meanwhile, on January 5, 1979, plaintiffs' attorney sent defendant Kiger another letter at his Newberg address advising him that because he had not brought the contract current in accordance with the letter of December 11, the full balance due under the contract was now due and had to be paid within ten days to the attorney's office; that letter was not received by defendant Kiger until after he had been served with process in this proceeding.

On January 20, 1979, prior to receiving plaintiffs' attorney's January 5 letter, defendant Kiger wrote plaintiffs' counsel again and sent a check in the amount of $400; at least so he testified, and there is no evidence to the contrary. After being served with process in this proceeding, defendant Kiger sent $250 to plaintiffs' attorney in March, 1979, and another $400 check on June 3, 1979. Neither of those checks was negotiated or returned.

From the foregoing facts, it appears that the situation was confusing, at best. It is clear, however, that at least until July 10, 1978, the original vendor, and his successors in interest, waived the time essence provision of the contract. On that date, Harold Iversen, as personal representative of the Hansen estate, attempted to reinstate the time essence clause by notifying defendant "that payments on said loan are delinquent. If you do not make payments as agreed I will have to take legal action." Even assuming that defendant Kiger received that letter, which he denied, the letter did not tell him how much was needed to bring the contract current, and all payments made subsequent to the date of that letter were accepted by plaintiffs without any comment as to whether they were adequate to cure the claimed default.

Given the history of the dealings between the original vendor and his successors, and the vendees, it cannot be said that defendant Kiger would know how much the vendors claimed he was in default. In fact, Mrs. Iversen, who is a bookkeeper and is familiar with mortgage loan practices, kept payment records for her husband Harold Iversen commencing in January, 1975, while her husband was personal representative of Mr. Hansen, but was unable to testify at trial as to the amount of the delinquency under the contract. She made several different computations resulting in differing amounts.

Plaintiffs' attorney's letter of December 11 presents the same problem as did Mr. Iversen's letter of July 10: it did not advise Mr. Kiger what was necessary to bring the contract current, yet gave him only ten days (less delivery time) within which to cure it. According to the computations made by the trial court, which we accept as accurate, by the time of the court's decision herein defendant Kiger owed $725 in addition to the sum of $1,875 he had deposited with the clerk of the court. It appears, therefore, that as of the December 11 letter, defendant Kiger was in default somewhere in the neighborhood of $1,500, and even if the letter had stated the amount claimed to be

necessary to cure the default and had been received by defendant prior to the deadline, we do not think the ten-day period within which to cure a default of that size, given the background of this relationship, was reasonable. At the least, the parties would have been required to discuss and resolve the amount in arrears.

We cannot say on these facts, that the vendors, after waiving the time essence clause, gave the vendee reasonable notice of the default, together with a reasonable time within which to cure it. *Stinemeyer v. Wesco Farms, Inc.,* 260 Or 109, 487 P2d 65 (1971). It follows, therefore, that the January 5 letter purporting to accelerate the full principal balance due under the contract was premature, as was the subsequent filing of the complaint seeking a strict foreclosure of the contract.

Under the *Stinemeyer* case, the court stated that the vendee was entitled to raise the question by a plea in abatement, which defendant Kiger did here. In effect, the trial court, after hearing all of the evidence, granted that plea by permitting defendant to cure the default by October 10, 1979, (approximately a three-month period) in default of which he ruled that a decree of strict foreclosure would be entered. The defendant, having cured the default as determined by the trial court, and within the time permitted, was entitled to a judgment dismissing plaintiffs' complaint.

The trial court also awarded defendant Kiger attorney's fees in the amount of $3,000, which plaintiffs contend should not have been allowed. In this connection, plaintiffs make two contentions: (1) that no attorney's fees should have been awarded because they had to commence the lawsuit to bring the contract current, and (2) that defendant prayed for only $2,800 attorney's fees in his answer, and should have been limited to that amount, if any were allowable. With respect to the first contention, we have concluded, as it appears the trial court did, that the foreclosure complaint was premature, and that if defendant Kiger had been advised what was necessary to bring the contract

current, no lawsuit would have been necessary. Accordingly, the trial court properly awarded attorney's fees to defendant Kiger pursuant to the contract provision.

■       With respect to the amount of those fees, the parties stipulated at the commencement of the trial that attorney's fees could be determined on the basis of affidavits submitted subsequent to trial. Defendant Kiger's attorney's affidavit supported, on its face, a fee in the amount of $3,000, and plaintiffs' objection to the allowance of attorney's fees did not go to the amount, but rather to whether any fees should be allowed. The award of attorney's fees is affirmed.[2] *See Earls et ux v. Clarke et al,* 223 Or 527, 532, 355 P2d 213 (1960).

Affirmed.

---

[2] Plaintiffs also assign error to the awarding of certain costs, to which they filed timely objections. The trial court did not award those costs.