Argued and submitted October 31, 1984, reversed and remanded with instructions
February 27, 1985

LEGG et ux,
*Respondents,*

*v.*

ALLEN et ux,
*Appellants,*
FEDERAL DEPOSIT INSURANCE CORPORATION,
*Respondent.*

(82-2426-NJ-2; CA A29751)

696 P2d 9

Claud Ingram, Eugene, argued the cause for appellants. With him on the brief was Bick & Monte, P.C., Eugene.

Frank R. Alley, III, Medford, filed the brief for respondent Federal Deposit Insurance Corporation.

Steven L. Swartsley, Medford, waived appearance for respondents Richard C. Legg and Adella Legg.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Defendants Allen appeal from a judgment granting plaintiffs strict foreclosure of a land sale contract for commercial property.[1] They contend that the trial court erred in finding that they were in default when plaintiffs locked defendants out of the property, because plaintiffs had waived the contract's "time-essence" clause and had failed to reinstate it and allow defendants a reasonable opportunity to cure the delinquency. In addition, they contend that the trial court erred in failing to hold that, when plaintiffs locked them out of the property, they repudiated the contract and converted all of defendants' personal property within.[2] We agree with those contentions; accordingly, we reverse the judgment and hold that defendants are entitled to judgment on their counterclaims for rescission and conversion.

On February 28, 1980, plaintiffs, as sellers, and defendants Allen, as buyers, entered into a land sale contract, which contained a time-essence clause and required monthly payments on the first day of each month, beginning May 1, 1980. The contract also prohibited buyers from encumbering the real property subject to the contract. On January 21, 1981, buyers granted Bear Creek Valley Bank (defendant Federal Deposit Insurance Corporation is its successor) the beneficial interest in a deed of trust covering the property. On July 13, 1981, sellers' attorney informed buyers that their action constituted a breach of the contract, but they took no further action until buyers failed to make the August 1, 1981, payment, at which time sellers instituted foreclosure proceedings.

On September 30, 1981, the contract was amended by sellers' agreeing to waive the nonpayment default and to dismiss the foreclosure proceeding in consideration of, *inter alia,* buyers' bringing current the contract payments and consenting to a modification of the default provision.[3] The

---

[1] At the time this dispute arose, defendants operated a grocery store.

[2] The trial court found that plaintiffs had converted only defendants' cash register, which plaintiffs allowed to be removed by a third party.

[3] The amendment did not expressly waive the alleged default by buyers in encumbering the property to Bear Creek Valley Bank. Sellers, however, are estopped from relying on the encumbrance as a ground for strict foreclosure, because they were aware of the mortgage and consented to it by consistently accepting payments after their knowledge of the existence of the encumbrance. Their attorney explained that

amendment, therefore, contains the relevant terms of default and controls the time from which it is proper to consider whether sellers had waived the time-essence clause.[4]

After the amendment, only one contract payment was made within the ten-day grace period. Sellers always accepted the late payments. Buyers failed to make the April 1, 1982, payment and consolidated it with the May payment, which sellers accepted on May 18, as of which time the payments were current. Buyers failed to make the June 1 payment, and on June 30 they received from sellers' attorney the following notice:

> "The June payment on your contract was due on June 1, was delinquent as of June 10, and has not yet been paid. You must make this payment within 5 days or the Leggs will exercise their contractual remedies."

After receipt of that letter, buyer Edward Allen called sellers' attorney and offered to make the payment on July 9. There is sharply conflicting evidence whether the offer was accepted. On July 9, Edward Allen called sellers' attorney again and offered to make the payment on July 12. The evidence strongly suggests that sellers' attorney indicated that he would telephone Allen and inform him of sellers' response, which he failed to do. Sometime before noon on July 9, sellers changed the locks on the grocery store, thereby excluding buyers from the property. On July 12, sellers filed this proceeding. The complaint purported to accelerate the principal balance due.

■    The initial question is whether the trial court erred in concluding that sellers had not waived the time-essence clause as of July 9, 1982, when they took possession of the store. We think it is clear that they had. After the September 30, 1981, amendment every payment, except one, was made after the

---

sellers were willing to reinstate the loan and dismiss the earlier foreclosure proceeding, because the proceeds of the secured loan were to be used to improve the property.

[4] The terms of default read as follows:

> "*Occurrence of Default:* Time is of the essence of this agreement. A default shall occur if:

> "(a)  Buyers fail to make any payment within ten (10) days after it is due * * *.

> "(b)  Buyers fail to perform any other obligation imposed by this agreement and do not correct such failure within thirty (30) days after receipt of notice from Sellers specifying the nature of the failure and the required correction."

ten-day grace period and all were accepted. That conduct waived the time-essence clause and deprived sellers of their right to strictly foreclose without having first given buyers reasonable notice of their intention to reinstate the clause and allowing a reasonable opportunity to cure the delinquency. *Soltis v. Liles,* 275 Or 537, 542, 551 P2d 1297 (1976); *Fisher v. Tiffin,* 275 Or 437, 440, 551 P2d 1061 (1976); *Stinemeyer v. Wesco Farms, Inc.,* 260 Or 109, 116, 487 P2d 65 (1971).[5]

■ The notice from sellers' attorney received by buyers on June 30, 1982, fails to satisfy either requirement. First, it does not state sellers' intention to reinstate the time-essence clause. Sellers, therefore, did not re-establish their right to insist on the strict performance of buyers' obligations to make future payments.[6] *Compare Salishan Hills, Inc. v. Krieger,* 62 Or App 84, 89, 660 P2d 160, *rev den* 295 Or 259 (1983). Second, the notice did not afford buyers a reasonable time within which to cure the delinquency. *See, e.g., Farmer v. Groves,* 276 Or 563, 567, 555 P2d 1252 (1976); *Iverson v. Kiger,* 48 Or App 873, 878-79, 617 P2d 1386 (1980).

In *Farmer,* the buyers sought to rescind a land sale contract. Their contract payments had been sporadic for six months and thus the time-essence clause had been waived when the sellers notified them they had "ten days or two weeks" to cure past delinquencies. Failing to satisfy the sellers' demand, the buyers moved out of the property, after which the sellers padlocked the door and declared a forfeiture. The buyers contended that, because the notice to cure past delinquencies was unreasonable, the sellers' subsequent conduct constituted a repudiation of the contract. The Supreme Court agreed:

---

[5] Although it is not clear from *Stinemeyer v. Wesco Farms, Inc., supra,* whether reasonable notice of the intention to reinstate the "time-essence" clause and a reasonable opportunity to cure past delinquencies are cumulative conditions precedent to sellers reclaiming the right to strict foreclosure, *Soltis v. Liles, supra,* appears to clarify the applicable law. In *Soltis,* the court held:

"* * * Under the law in this state, it is clear that a vendor or creditor who has repeatedly accepted late payments in the past cannot declare a default without first giving the debtor reasonable notice of his intention to insist upon strict compliance with the terms of the contract in the future. The vendor or creditor must also allow the debtor a reasonable opportunity to cure any past delinquencies. * * *" 275 Or at 542.

[6] In any event, the time for such performance had not passed when sellers repossessed the property on July 9, 1982.

"We hold that the ten days' or two weeks' notice which defendants gave was not reasonable notice under the circumstances of this case. A wrongful declaration of forfeiture allows the purchasers to effect a rescission of the contract by acquiescing in such repudiation." *Farmer v. Groves, supra,* 276 Or at 567.

In *Iverson v. Kiger, supra,* the sellers sought to strictly foreclose a land sale contract after the time-essence clause had been waived. The buyer had been notified that he had ten days to cure past delinquencies. The court held that, given the amount delinquent, approximately $1,500, and given the parties' course of conduct, the ten-day period was insufficient. It held that the subsequent notice of acceleration and the strict foreclosure action were premature and affirmed dismissal of the complaint.

Given the parties' course of conduct here, the notice allowing five days to cure the delinquency was unreasonable, particularly when the five days encompassed a weekend and a holiday. It follows that sellers were not entitled to declare a default on July 9, 1982, when they took possession of the store.

■ The second issue is whether it was reasonable for sellers to repossess the store by changing the locks, thereby excluding buyers from possession. There is no evidence that that action was necessary to protect sellers' security interest, and we have held that buyers were not in default when sellers changed the locks on the store. It follows that sellers' conduct constituted a wrongful repudiation of the contract, *Farmer v. Groves, supra,* 276 Or at 567, and that buyers are entitled to rescind the contract.

■ The question remains whether sellers converted all of the personal property in the store. Oregon adopted the Restatement (Second) of Torts 431, § 222A (1965), in *Mustola v. Toddy,* 253 Or 658, 456 P2d 1004 (1969). The Restatement provides:

"(1) Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.

"(2) In determining the seriousness of the interference and the justice of requiring the actor to pay the full value, the following factors are important:

"(a)    the extent and duration of the actor's exercise of dominion or control;

"(b)    the actor's intent to assert a right in fact inconsistent with the owner's right of control;

"(c)    the actor's good faith;

"(d)    the extent and duration of the resulting interference with the other's right of control;

"(e)    the harm done to the chattel;

"(f)    the inconvenience and expense caused to the other."

It is undisputed that buyers were the owners or rightful possessors of all of the personal property in the store and that sellers had no interest in it. When sellers changed the locks on the store, they manifested their intent to exercise exclusive dominion and control over the personal property. They did not notify buyers of their action, and when buyers discovered what had occurred, they contacted sellers, who offered no explanation. Not only did sellers make no attempt to make the property accessible to buyers, they caused the police to keep them from entering the store when Edward Allen and his attorney visited the property. Furthermore, when third parties sought possession of some of the equipment in the store, sellers gave them the equipment without attempting to contact buyers. Finally, it was not until October 20, 1982, approximately three months after sellers locked buyers out, that sellers informed buyers that they were making no claims of right to the personal property. By that time, much of the stock in trade had deteriorated to the point that it was unsaleable. The extent and duration of sellers' dominion and control amounts to a conversion as a matter of law.

■■    On their claim for rescission, buyers are entitled to recover payments made on the contract less the reasonable rental value of the premises for the time they had possession. *Johnston v. Gilbert,* 234 Or 350, 354, 382 P2d 87 (1963). Thus, buyers are entitled to their down payment of $20,000 and payments that they made under the contract in the sum of $31,670.08. Buyers are not entitled to recover their costs for improvements, because they did not establish that the improvements enhanced the value of the property. *See Farmer v. Groves, supra,* 276 Or at 568. On their claim for conversion, buyers are entitled to the fair market value of the property converted at the time and place of conversion, with interest

from that date. *Hall v. Work,* 223 Or 347, 357, 354 P2d 837, 366 P2d 533 (1960).

The parties put on no evidence of the reasonable rental value of the property, and the trial court made no findings with respect to the market value of the chattels converted. Therefore, the case is remanded with instructions to take evidence only on the issue of the reasonable rental value to determine the amount of restitution, if any, to which buyers are entitled and to determine the fair market value of the personal property converted.

Reversed and remanded with instructions to determine the amounts defendants are entitled to as restitution and as damages for conversion and to enter judgment therefor.