G. Michael CUSICK
and Christine B. Cusick,
husband and wife,
*Appellants,*

*v.*

Joe K. MEYER
and Jane Fisher Meyer,
husband and wife,
*Respondents.*

(A8601-00306; CA A70470)

863 P2d 486

Stephen T. Janik argued the cause for appellants. With him on the briefs were David A. Urman and Ball, Janik & Novack.

Wade Regier argued the cause for respondents. With him on the brief were Gary M. Bullock and Bullock & Regier.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

ROSSMAN, P. J.

**ROSSMAN, P. J.**

Plaintiffs appeal from a judgment for defendants after trial of plaintiffs' statutory ejectment claim. This is the second time that this matter has come before us. In our first opinion, *Cusick v. Meyer*, 98 Or App 358, 359, 779 P2d 198 (1989), we held that the trial court had erred in granting summary judgment to plaintiffs and in awarding them attorney fees. We remanded the case for trial of plaintiffs' ejectment claim. We now review the trial court's decision on remand. Because a claim of ejectment is an action at law, we review to determine whether the trial court's findings are supported by any competent evidence and for errors of law. *Roesch v. Wachter*, 48 Or App 893, 896, 618 P2d 448 (1980).

Plaintiffs were the owners of a residence on an oversized lot in Portland. The trial court found that, in 1981, they partitioned the property into two parcels, Parcel I containing the house and land, and Parcel II containing land only. The evidence supports the trial court's finding that the property was partitioned at that time. Because real property taxes on the property were delinquent at the time of the partition, the partition was not reflected on the assessment rolls or on property tax statements. The omission did not affect the completion of the partition, however.

In the fall of 1984, defendants offered to purchase plaintiffs' home and real property for $155,000. Plaintiffs agreed to the price. The agreement between the parties was structured as a two-year lease with an option to purchase. Plaintiffs had the option to partition the property and to retain Parcel II for their own personal use.[1]

---

[1] The agreement provided, in part:

"*Partition.* If Landlord, without expense to Tenant, in compliance with any and all state and local requirements, without changing the existing zoning of the Premises and with First Interstate Bank of Oregon's consent, partitions the Premises into Parcel I and Parcel II as shown on Exhibit D hereto within two months of Tenant's signing this Agreement, then Tenant agrees that the term Premises shall thereafter refer to Parcel I; and should Tenant exercise the Option, Tenant agrees to grant a reasonable vehicle easement along the southern boundary of Parcel I as indicated on Exhibit D for access to a personal residence should one be built on Parcel II. * * * If the Premises is not partitioned within two months as provided above, Landlord shall have no right thereafter to partition the Premises and the Premises shall include both Parcel I and Parcel II." (Emphasis in original.)

Under the agreement, if defendants exercised their option to purchase the property, defendants would be the owners of the entire property, unless plaintiffs partitioned the property within two months of the execution of the agreement, in which case defendants would be the owners of Parcel I and plaintiffs would be the owners of Parcel II. Parcel I has access to the street; Parcel II does not. In order to provide access to the street, defendants agreed to grant plaintiffs a reasonable vehicle easement across the southwest border of Parcel I. Plaintiffs' exercise of their right to partition the property and retain Parcel II would not have affected the purchase price.

When the parties executed the agreement on December 7, 1984, the property was encumbered by a real property tax lien and by a mortgage evidenced by two installment notes from First Interstate Bank totalling $68,163. In order to exercise their option, defendants were required to pay plaintiffs $15,000 cash on or before December 1, 1986. Plaintiffs were required to apply $7,727.89 of that amount to satisfy the tax lien. If defendants timely exercised their option to purchase, the transaction would close on December 1, 1986. At that time, defendants were required to pay to plaintiffs $25,000 cash and to either assume the First Interstate Bank notes and execute a promissory note to plaintiffs in the amount of $42,622.62 or pay plaintiffs the balance in cash. The agreement required plaintiffs to provide defendants with title insurance at plaintiffs' expense. It also contained a provision for attorney fees to the prevailing party in any action brought to enforce the terms of the agreement. The agreement made no mention of the 1981 partition, and plaintiffs did not inform defendants that they had previously partitioned the property. Plaintiffs put on evidence that, until 1987, they were not certain that their attempts to partition the property in 1981 had been successful. The trial court on remand found that plaintiffs knew that the property had been partitioned at the time they executed the agreement with defendants.

Defendants exercised their option to purchase the property on December 14, 1984. The parties had established an escrow with United States National Bank of Oregon. Defendants deposited the $15,000 option price in escrow, and,

as contemplated by the agreement, plaintiffs executed a statutory warranty deed to the entire property and placed it in escrow for defendants. The escrow instructions require delivery of the deed to defendants on receipt of notice of intent to exercise the option and on payment of the purchase price no later than December 1, 1986. The instructions contained no provision accounting for the conditional definition of the term "premises" as used in the agreement or for the possible partition of the property.

In August, 1985, defendants began to construct a fence around Parcels I and II. Plaintiffs objected, claiming that they owned Parcel II. Defendants informed plaintiffs that they had failed to exercise their option to partition the property within the two-month period provided by the agreement. Plaintiffs requested an extension of that option, and defendants refused.

Plaintiffs consulted their attorney, and told him that they thought they had completed the partition of the property in 1981. In an effort to verify the existence of the partition, the attorney obtained reports from two title companies, and both reported that the property had not been partitioned. Plaintiffs' attorney advised them that the partition was not complete.

In January, 1986, plaintiffs filed their original complaint in this proceeding, seeking, among other things, to reform the agreement and to eject defendants, on the grounds of fraud, misrepresentation or mistake regarding the inclusion in the agreement of the two-month limitation on plaintiffs' right to partition the property. Defendants' answer denied that plaintiffs were entitled to Parcel II. Defendants counterclaimed for breach of contract, contending that plaintiffs had failed to make repairs they had agreed to perform within 90 days of the date the agreement was executed.

In December, 1986, after the filing of this proceeding, the transaction closed as scheduled, despite the pendency of the litigation. Defendants paid into escrow $25,000 in cash, assumed plaintiffs' two installment notes with First Interstate Bank, and executed a promissory note payable to plaintiffs in the sum of $42,622.62. Escrow recorded and released the statutory warranty deed to defendants that plaintiffs had

executed in 1984. In February, 1987, at defendants' request, plaintiffs delivered a revised statutory warranty deed to escrow to include a land use disclaimer. In April, 1987, plaintiffs amended their complaint to include an allegation that the property had been partitioned in 1981. That is the complaint on which the case was tried.

On remand, the court concluded that plaintiffs had waived any right they might have had under the terms of the agreement to retain title to Parcel II by delivering the statutory warranty deeds in December, 1986, and February, 1987, knowing that the property had been previously partitioned. The court declared defendants to be the owners of both Parcel I and Parcel II. Additionally, the court granted judgment to defendants for $200 on their counterclaim for breach of contract, declared defendants to be the prevailing party and awarded them attorney fees, costs and disbursements of $94,682.

■ Assuming, for the purpose of this appeal alone, that the partition that plaintiffs accomplished in 1981 meets the terms of the agreement and provides the prerequisite for plaintiffs' retention of Parcel II, the first question is whether plaintiffs have given up their interest in Parcel II by deeding the entire property to defendants. That depends in part on whether the deeds are conclusive as to what the parties intended to convey, or whether we may inquire beyond them.

■ The mere parting with control over a deed instrument is of itself insufficient to constitute a delivery at law, unless it is accompanied by an intention to create a present interest in the grantee. *Hanns v. Hanns*, 246 Or 282, 423 P2d 499 (1967). Although it is true that the deeds are absolute on their face and contain no reservation of interest, whether the deeds convey an interest in Parcel II is dependent on what the parties contemplated and whether it was intended that, in delivering the deeds to defendants, plaintiffs would relinquish their right to retain Parcel II under the terms of the agreement. *Jensen v. Miller*, 280 Or 225, 231, 570 P2d 375 (1977); *City of North Bend v. County of Coos*, 259 Or 147, 152, 485 P2d 1226 (1971). The determination of the parties' intentions with regard to the effect of the deeds on the contractual provision regarding plaintiffs' right to retain Parcel II is a matter of fact to be adduced from the evidence at

trial. *See Jensen v. Miller, supra*, 280 Or at 232. We conclude, as a matter of law, that the undisputed evidence permits only the conclusion that plaintiffs did not intend, by delivering the deeds, to relinquish their interest in Parcel II.

Defendants' position that plaintiffs have lost their interest in Parcel II is based exclusively on the fact of delivery of the deeds, and the presumptions of intent that arise from that. Defendants do not contend that plaintiffs actually intended to relinquish their interest in Parcel II by delivering the deeds to defendants or that defendants were led falsely to believe that plaintiffs no longer claimed an interest in Parcel II. In fact, defendants knew that plaintiffs did not actually intend the delivery of the deeds to constitute a relinquishment of their interest in Parcel II. As defendants acknowledge, the reason that plaintiffs did not object to the closing of the transaction in December, 1986, and delivered the deed, was that they did not desire to complicate the existing litigation by interpleading the escrow company or risk breaching the terms of the contract in the event that they were wrong in this litigation, not that they intended to give up their interest in Parcel II. In the light of that acknowledgment and the pendency of this lawsuit, which plaintiffs were strongly pursuing at the time of the delivery of the deeds, we conclude that, despite the delivery of the deeds, it is not possible to find that the parties contemplated the extinction of plaintiffs' right to Parcel II.

It is undisputed that the second deed was intended as a correction deed only. It does not provide an independent basis for finding that plaintiffs intended to give up their interest in Parcel II. Accordingly, we conclude as a matter of law that the 1986 and 1987 conveyances were conditioned upon the outcome of this litigation and plaintiffs' establishment of their interest in Parcel II.

■■ A related question, and the one that formed the basis for the trial court's decision on remand, is whether plaintiffs' conduct in delivering the deeds permits the conclusion that plaintiffs waived their right to assert an interest in Parcel II. A party may voluntarily and knowingly waive a right under a contract. *Wallstreet Properties v. Gassner*, 53 Or App 650, 661, 632 P2d 1310 (1981).

■ In the absence of an express written waiver, a waiver may be implied either (1) if the acts showing an intention of the party to waive are clear, unequivocal and decisive, or (2) if the party possessing the right has acted so as to justifiably induce the other party to believe that the party will not assert or exercise the right, and to permit the first party to insist upon the right would prejudice the second party. *Waterway Terminals v. P.S. Lord*, 242 Or 1, 26-27, 406 P2d 556 (1965); *Reserve Life Ins. Co. v. Howell*, 225 Or 71, 81, 357 P2d 400 (1960).

■ Defendants' exclusive contention is that plaintiffs waived their interest in Parcel II when, knowing, as the trial court found, that the property had been partitioned, they deeded the parcel to defendants. Again, we conclude that, despite the physical delivery of the deeds, the pendency of this lawsuit at the time of closing and the delivery of the deeds, in which plaintiffs contended that they were entitled to partition the property and to eject defendants, negates any conclusion, based on the delivery of the deeds, that plaintiffs had expressed a "clear, unequivocal, and decisive," intention to waive an interest in Parcel II.[2] Additionally, the fact that the litigation was pending at the time the deeds were delivered defeats any claim by defendants that they justifiably relied on the delivery of the deeds to their detriment. Defendants could not reasonably have believed that plaintiffs intended to waive their interest in Parcel II while this lawsuit was pending in which plaintiffs claimed to own Parcel II and sought to eject defendants. The trial court erred in concluding that plaintiffs waived their right to assert an interest in Parcel II.[3]

Because the trial court concluded that plaintiffs had waived their right to assert an interest in Parcel II, it did not consider whether the 1981 partition satisfied the terms of the agreement. For the purpose of this appeal only, we have assumed that partition is adequate. On remand, the court

---

[2] We note that the pendency of litigation is notice to those who obtain an interest in the property after the commencement of the litigation that they will be bound by the outcome of the litigation, and that they take their interest subject to the outcome of the litigation. *Land Associates v. Becker*, 294 Or 308, 313-14, 656 P2d 927 (1982).

[3] No contention is made that plaintiffs are barred on any other ground from asserting an interest in the property.

should consider whether the 1981 partition satisfies the terms of the agreement and whether plaintiffs are thereby entitled to retain Parcel II.

■　　Plaintiffs assign error to the court's award of attorney fees to defendants. As we held in our first decision in this case, attorney fees are not available to either party in plaintiffs' action for ejectment. *Cusick v. Meyer, supra,* 98 Or App at 359. In view of our determination, on remand the court should reconsider the question of attorney fees in the light of its final disposition of this matter.

Reversed and remanded for proceedings not inconsistent with this opinion.