Argued and submitted November 27, 2007, on appeal, judgment for plaintiffs on breach of contract claim reversed, award of attorney fees reversed, dismissal of defendant Jimenez's assault counterclaim reversed, otherwise affirmed; cross-appeal dismissed as moot September 10, 2008

Grace SOLIZ
and Jeff Alt,
*Plaintiffs-Respondents,*
*Cross-Appellants,*

*v.*

Juan JIMENEZ
and Maria Jimenez Guerrero,
*Defendants-Appellants,*
*Cross-Respondents.*

Marion County Circuit Court
05C15896; A131660

193 P3d 34

Paul B. Meadowbrook argued the cause for appellants - cross-respondents. On the brief was F. de la Puente.

Charles M. Greeff argued the cause for respondents - cross-appellants. With him on the brief was Law Office of Charles M. Greeff, P.C.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ARMSTRONG, J.

**ARMSTRONG, J.**

This appeal and cross-appeal arise from defendant Jimenez's alleged breach of a contract to sell his home to plaintiffs. Defendants appeal from a general judgment that awarded plaintiffs damages and attorney fees against Jimenez for breach of contract, that declared defendant Guerrero's recorded interest in the home void, and that dismissed Jimenez's counterclaim for assault. Plaintiffs cross-appeal the denial of specific performance and an award of equitable compensation on their contract claim.

On appeal, we reverse the judgment on the breach of contract claim, reverse the dismissal of Jimenez's counterclaim for assault, and affirm the declaratory judgment. In light of our disposition of the appeal, we dismiss the cross-appeal as moot.

Some procedural background is helpful in this case. Plaintiffs Alt and Soliz, who are married, filed an action that alleged two claims—breach of contract and declaratory judgment. Under the breach of contract claim, plaintiffs included two counts: Count 1 for specific performance of the land sale contract and, in the alternative, Count 2 for damages. The declaratory judgment claim sought a declaration that the conveyance to Guerrero of an interest in the property that plaintiffs sought to purchase was void as against plaintiffs. Jimenez counterclaimed for assault.

Plaintiffs moved for summary judgment on Count 1 of their breach of contract claim for specific performance and on their declaratory judgment claim. Defendants moved for summary judgment on both counts of plaintiffs' breach of contract claim. After a hearing, the trial court issued a letter opinion in which it made "findings of fact" and concluded that, as a matter of law, Jimenez had breached the contract "when he failed to participate in the closing on [the contract's specified closing date]." However, the court denied plaintiffs an award of specific performance for the breach, concluding that the appropriate remedy was an award of damages and attorney fees. The court further granted summary judgment for plaintiffs on their declaratory judgment claim and dismissed Jimenez's assault claim. The general judgment

reflected the court's letter opinion, awarding damages to plaintiffs on the breach of contract claim, entering the declaration sought by plaintiffs on their declaratory judgment claim, and dismissing Jimenez's counterclaim.

Defendants' first and third assignments of error pertain, respectively, to the granting of summary judgment for plaintiffs on their breach of contract claim and to the denial of defendants' motion for summary judgment on that claim. Plaintiffs' sole assignment of error on cross-appeal is that the trial court erred in denying them specific performance and an award of equitable compensation for Jimenez's breach of the land sale contract.

■ Plaintiffs argue on appeal that an order denying a motion for summary judgment is not appealable and, therefore, that defendants' third assignment of error is not reviewable. However, as in this case, when cross-motions for summary judgment are made on a claim and the parties have assigned error to the granting of the adverse parties' motion and the denial of their own motion, both of those rulings are subject to review. *Ellis v. Ferrellgas, L.P.*, 211 Or App 648, 652, 156 P3d 136 (2007).

Summary judgment is appropriate if, after reviewing the evidence in the record "in a manner most favorable to the adverse party," the court concludes that "no objectively reasonable juror could return a verdict for the adverse party." ORCP 47 C. We therefore review the record on each motion in the light most favorable to the party opposing the motion. *Ellis*, 211 Or App at 653; *see also Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or 329, 332, 83 P3d 322 (2004). Because we will be considering both the granting and the denial of motions for summary judgment on the breach of contract claim, for ease of organization we recite at this point all of the pertinent evidence, disputed and undisputed, favorable and unfavorable to the parties.

On May 12, 2005, plaintiffs and Jimenez entered into an agreement entitled "Contract for Purchase of Residence or Other Real Estate," in which Jimenez agreed to sell his home to plaintiffs. Guerrero, not a party to the contract, was Jimenez's domestic partner and lived with him in the home. The written agreement provided that plaintiffs

would purchase the home for $155,900 and pay $1,000 into an escrow account as a deposit on the contract, and further provided that closing would take place on May 31, 2005. Soliz arranged for the title company at which she worked to handle the escrow account and closing. On May 25, plaintiffs signed all of the documents for closing, having obtained the financing necessary to close the transaction. Because the title company wanted to ensure that the loan was funded and the deed was recorded by May 31, the title company scheduled Friday, May 27, as the date to close the transaction at the title office, notwithstanding that the contract specified May 31 as the closing date.

On the evening of May 26, plaintiffs went to defendants' home. Defendants spoke only Spanish, and Alt did not speak Spanish, so Soliz spoke with defendants in Spanish and then interpreted the conversation for Alt. Soliz explained to Jimenez that she wanted him to "sign one paper tomorrow, because we are not going to close the deal" on May 31. Jimenez, understanding the request as one to extend the May 31 closing deadline, initially refused, but then agreed to review the document with Guerrero. He told Soliz that she could bring the paper over to his house during lunchtime the next day. Soliz agreed and told Alt about the understanding that she had reached with Jimenez. Alt reacted angrily, insisting that Jimenez sign the paper the next morning and offering to bring the paper to Jimenez's workplace. When Jimenez refused to sign the paper anywhere but at his home at lunchtime, Alt said, "I am going to sue you and make sure you lose your job." In his affidavit, Jimenez stated that Alt then "advanced toward me in a threatening manner and pushed me with his chest." Guerrero intervened between the two men, and both women told Alt to calm down. When Alt continued to advance toward Jimenez, Guerrero ordered both plaintiffs to leave the property.

A representative for the title company, Jeanne Ayala, stated in an affidavit that the title company had "made arrangements for Mr. Jimenez on three (3) occasions to have one of our courtesy signers go to his location. * * * However, Mr. Jimenez failed or refused to sign the documents * * *." In his affidavit, Jimenez stated that no one came to the house the day after the altercation.

On May 28, Jimenez received a letter from an attorney, dated May 27, 2005, indicating that she represented plaintiffs and stating, in pertinent part:

> "Although you signed the Contract, and agreed to be bound thereby, my clients are informed that you are now refusing to complete the sale.
>
> "While my clients could file an action seeking, among other things, an injunction from the court requiring you to specifically perform your agreement to sell your property, they are willing to agree to rescind the Contract provided that you execute any paper work required to refund their deposit money in the amount of $1,000.00 and reimburse them for the amounts they have spent to have the property inspected and appraised ($675.00).
>
> "Demand is hereby made that you respond to this letter within ten (10) days, indicating whether you will agree to either perform the Contract or to arrange to refund the deposit and reimburse the costs described above. Please address your response to me at the above address. If you are represented by legal counsel in this matter, please direct any communications to this office through your attorney.
>
> "If you are unwilling to either perform the Contract or to refund the deposit and reimburse the costs described above, my clients intend to initiate legal proceedings against you seeking specific performance or damages and the recovery of attorney fees pursuant to ORS 20.082.
>
> "Notwithstanding the foregoing, my clients reserve all rights under the Contract, at law and in equity. Thank you for your attention to this matter."

On May 31, Jimenez contacted an attorney for assistance with the matter, and Jimenez's attorney sent a letter to plaintiffs' attorney on June 2, advising her that Jimenez was willing to refund plaintiffs' deposit but not to reimburse plaintiffs for the inspection and appraisal costs. On June 4, plaintiffs' attorney spoke to Jimenez's attorney, explaining that she had not yet spoken to plaintiffs, but that she felt both sides could settle the dispute because they "were only $675 apart." Jimenez's attorney stated in his affidavit that both attorneys agreed not to "take any action against the other without notice, as long as negotiations were pending." On June 7, plaintiffs' attorney left a phone message with

Jimenez's attorney reporting that she had forwarded his letter to plaintiffs and that she would be in touch. Neither Jimenez nor his attorney heard anything more from plaintiffs until plaintiffs filed this action on June 20.

In granting summary judgment for plaintiffs, the trial court concluded that Jimenez had breached the contract when he failed to participate in the closing on May 31. Jimenez argues that the court's decision was erroneous because it made findings of fact not supported by the record.[1] The trial court's findings of fact include, in pertinent part, the following:

> "Plaintiffs became concerned that the closing [might] be complicated by the Memorial Day weekend and sought to accelerate the closing date, but Defendant did not agree to sign the papers early. Defendant's testimony and the testimony of his domestic partner that they thought Plaintiffs wanted to delay the closing date is not credible. Had the Plaintiffs wanted to delay the closing, they would not have asked Defendant to sign the papers in advance of the scheduled closing date."

Although we question whether some of those findings are supported by the record, the trial court's most significant error was in failing to review the evidence in the light most favorable to Jimenez. Jimenez stated in his affidavit that Soliz wanted him to sign a paper. Given that closing documents consist of more than one paper, and giving Jimenez all favorable inferences from the evidence, a factfinder could find that Jimenez did not understand that he was being asked to sign the closing documents early, and consequently, that he had not refused to sign the closing documents. It is also reasonable for a factfinder to infer from that evidence that the "paper" that Soliz wanted him to sign was, in fact, a document to delay the closing date. The trial court simply believed plaintiffs' version of events over defendants' version. In *Taal v. Union Pacific R. Co.*, 106 Or App 488, 494, 809 P2d 104 (1991), we said that credibility questions "are not for the court to resolve in dealing with contradictory evidence in a

---

[1] Defendants also argue that the affidavits on which plaintiffs relied for their summary judgment motion did not comply with ORCP 47 D. We conclude that the affidavits sufficiently complied with ORCP 47 D.

summary judgment setting." The trial court's sole responsibility was to determine whether, based on the evidence in the record, "no objectively reasonable juror could return a verdict [in favor of]" of Jimenez. ORCP 47 C. The trial court erred in its review of the evidentiary record.

Nevertheless, our review of the trial court's letter opinion leads us to believe that the court's ultimate conclusion had more to do with its treatment of plaintiffs' May 27 letter to Jimenez than with impermissible credibility determinations. With regard to the letter's effect, defendants argued to the trial court that the May 27 letter waived performance of the contract until after May 31, and once that date passed, the contract "expired by its own terms." In its letter opinion, the court concluded:

> "Defendant's ability to ignore the closing date was conditioned on his acceptance of the offer to rescind. While Defendant was given the opportunity to rescind the contract by the payment of $1,675 by June 6, the closing date was never changed. He ignored that date at his peril when he neither attended the closing on May 31, 2005 nor accepted the alternative offer."

On appeal, defendants again argue, in a somewhat different manner, that the letter constituted a waiver of all of plaintiffs' rights under the contract. Plaintiffs counter that the letter's intent was to offer terms for rescission and to confirm to Jimenez that they intended to enforce their contractual rights against him if he did not agree to the terms set forth in their offer to rescind. Plaintiffs argue that in no way did their letter indicate an intentional relinquishment of their rights under the contract.

■ None of those arguments is entirely correct. We agree with plaintiffs that the May 27 letter acted as an offer to rescind. *See Phillips v. Gibson*, 133 Or App 760, 764, 893 P2d 574 (1995). However, that letter also demanded that Jimenez respond to their new offer or *agree to perform under the contract* by a date that would occur *after* the May 31 closing date. We conclude that, based on the undisputed facts in the record, including plaintiffs' statement in their letter that Jimenez must respond by a date past the May 31 closing date, and including the actions that plaintiffs thereafter took

through their attorney to negotiate a settlement, plaintiffs waived their right to have the contract performed by May 31.

 Under contract law, "[a] party to a contract may waive performance of any provision of the contract that is for its benefit." *South Lake Center v. Waker Assocs., Inc.*, 129 Or App 581, 589, 879 P2d 1342 (1994). Even though a contract may require all modifications to the contract to be in writing, a waiver of a provision in the contract need not be in writing. *Bennett v. Farmers Ins. Co.*, 332 Or 138, 156, 26 P3d 785 (2001); *Moore v. Mutual of Enumclaw Ins. Co.*, 317 Or 235, 241, 855 P2d 626 (1993). A waiver may be inferred from the party's conduct, provided that the conduct is clear, unequivocal, and decisive in manifesting an intention to waive a right to performance. *Cusick v. Meyer*, 124 Or App 515, 522, 863 P2d 486 (1993), *rev den*, 318 Or 661 (1994). A waiver can also occur if the party acts "so as to justifiably induce the other party to believe that the party will not assert or exercise the right [to performance] and to permit the first party to insist upon the right would prejudice the second party." *Id*. The time of a party's performance may be waived by the parties. *Walker v. Feiring*, 53 Or App 433, 437, 632 P2d 1270 (1981). In *Alk v. Lanini*, 61 Or App 158, 161, 656 P2d 367 (1982), *rev den*, 294 Or 613 (1983), we held that a time of the essence clause, which was included in an earnest money agreement for the benefit of both buyers and sellers, could "be waived by either party with regard to the timing of the other party's performance" (footnote omitted).

In this case, the letter's demand was clear and unequivocal—Jimenez was given ten days to respond to plaintiffs' demand by either agreeing to perform the contract or agreeing to the proposed rescission terms. As written in the letter, the ten days would lapse on a date past May 31. According to plaintiffs, the fact that they told Jimenez that he could respond *after* May 31, by agreeing either to perform the contract or to accept the rescission terms, had no effect on Jimenez's obligation to close on the contract by May 31, because their letter also said that they were reserving all of their rights under the contract. We fail to see how a general reservation of rights prevails over a clear demand giving a

new date by which to agree to perform or to rescind the contract.

The trial court focused on what occurred *before* plaintiffs' May 27 letter as evidence of the parties' intentions and expectations regarding the contract. However, the letter altered plaintiffs' and Jimenez's expectations under the contract. There is nothing that occurred after plaintiffs sent their letter that could have led Jimenez to believe that he should ignore the letter's demands and sign closing papers by May 31.[2] Moreover, plaintiffs' conduct, through their attorney's negotiations and assurances that plaintiffs would consider Jimenez's offer to refund the earnest money and would get back to Jimenez, further confirmed to Jimenez that plaintiffs had waived the May 31 date of performance. We conclude, therefore, that, as a matter of law, plaintiffs' letter waived Jimenez's obligation to close the sale of the house by May 31.

■■ That conclusion, however, does not end the inquiry. Contrary to defendants' arguments, waiver of the time of performance does not constitute waiver of an entire contract; it simply waives the time of performance. *Alderman v. Davidson*, 326 Or 508, 513-14, 954 P2d 779 (1998). According to the evidence in the summary judgment record, plaintiffs had signed the closing documents and done everything required of them under the contract. Hence, they were not in breach of the contract, which continued to exist after May 31. Therefore, in order not to breach the contract, Jimenez would still need to perform his contractual obligations. The only question is when Jimenez was required to perform.

■ In cases involving land sale contracts, Oregon courts have consistently held that, once a seller waives a time of the essence clause, a buyer, *inter alia*, must be afforded "a reasonable time within which to perform [on the contract]." *Peck v. Security Bank of Oregon*, 276 Or 61, 67, 554 P2d 505 (1976); *see also Legg v. Allen*, 72 Or App 351, 355, 696 P2d 9

---

[2] Although there is evidence in the summary judgment record that the title company attempted on three occasions to have a courtesy signer go to Jimenez to have him sign closing documents, the evidence does not indicate when those attempts were made. Consequently, the title company's actions do not alter the effect of plaintiffs' May 27 letter and subsequent conduct.

(1985); *Iversen v. Kiger*, 48 Or App 873, 879, 617 P2d 1386 (1980). That principle also applies when a buyer is the party who waives the time of the essence clause. *See Contracts*, 17A Am Jur 2d § 467 (2004) ("A reasonable time to perform is implied where the agreed time for performance of a contract is waived." (footnotes omitted)).

Here, there is evidence that plaintiffs, by their demand letter, gave Jimenez at least ten days from the letter's date to agree to perform the contract. Were that the only evidence, a reasonable time to perform the contract might be within that time period. However, there is evidence that the parties engaged in discussions intended to resolve the disputes between them raised by the demand letter during the ten-day period and continuing thereafter, and that plaintiffs assured Jimenez that they would take no action against him until they had responded to Jimenez's alternative offer to refund the earnest money.

In light of that evidence, there are factual issues as to whether Jimenez breached the land sale contract by failing to close the sale within a reasonable time. It therefore follows that the trial court erred in granting summary judgment for plaintiffs on their breach of contract claim but did not err in denying defendants' summary judgment motion on the claim. Because we conclude that the trial court erred in granting summary judgment to plaintiffs, plaintiffs' cross-appeal challenging the trial court's decision to deny specific performance and an award of equitable compensation on the land sale contract is moot.

■ Defendants' second assignment of error is that the trial court erred in declaring that Jimenez's conveyance to Guerrero of a one-half interest in the property, recorded on September 30, 2005, was void. In their original complaint filed on June 20, 2005, plaintiffs named Jimenez as the sole defendant. That same day, plaintiffs also filed a notice of pendency of an action regarding the property, pursuant to ORS 93.740. On September 30, 2005, Jimenez and Guerrero recorded a bargain and sale deed that conveyed a one-half interest in the property to Guerrero. Thereafter, and pursuant to a stipulated motion to amend their complaint, plaintiffs filed a second amended complaint listing two claims,

breach of contract and declaratory judgment, and naming two defendants, Jimenez and Guerrero. Plaintiffs then filed a motion for summary judgment on the declaratory judgment claim, arguing that, under the provisions of ORS 93.740, the conveyance to Guerrero was void as to plaintiffs.

ORS 93.740 provides the method by which a party to a lawsuit that pertains to an interest in real property can record a notice of the pendency of an action to give notice to purchasers and encumbrancers of the pending lawsuit and the party's interest in the property. ORS 93.740(2) provides that a "conveyance or encumbrance that is not recorded in the manner provided by law before the filing of a notice of pendency that affects all or part of the same real property is void as to the person recording the notice of pendency."

Defendants do not dispute that the notice of a pending action on the property was filed on June 20 and that they recorded the deed conveying an interest in the property to Guerrero thereafter. However, they argue that the facts of this case fall within an exception in ORS 93.740(3) to the general rule established in ORS 93.740(2). ORS 93.740(3) provides:

"A conveyance or encumbrance is not void under subsection (2) of this section if:

"(a) The person who records a notice of pendency under this section has notice of the conveyance or encumbrance at the time the notice of pendency is recorded or otherwise does not act in good faith in recording the notice of pendency; or

"(b) Pursuant to ORCP 33, the court allows a person claiming an interest in real property under the conveyance or encumbrance to intervene in the suit for the purpose of seeking adjudication of the person's interest or priority in the property."

Defendants argue that subsection (3)(b) applies to this case because the court, by allowing plaintiffs to amend their complaint to add Guerrero as a party, effectively made Guerrero an intervenor under ORCP 33 A. Although defendants appear to acknowledge that Guerrero did not fulfill the procedural requirements for intervention under ORCP 33, they argue that it would exalt form over substance to deny

Guerrero the benefit of ORS 93.740(3)(b) on the ground that she became a party by stipulation rather than intervention. Plaintiffs counter that the exception in ORS 93.740(3)(b) clearly states that it applies to a person intervening "[p]ursuant to ORCP 33," and Guerrero did not intervene under that rule.

ORCP 33 provides:

"A Definition. Intervention takes place when a third person is permitted to become a party to an action between other persons, either by joining the plaintiff in claiming what is sought by the complaint, by uniting with the defendant in resisting the claims of the plaintiff, or by demanding something adversely to both the plaintiff and defendant.

"B Intervention of right. At any time before trial, any person shall be permitted to intervene in an action when a statute of this state, these rules, or the common law, confers an unconditional right to intervene.

"C Permissive intervention. At any time before trial, any person who has an interest in the matter in litigation may, by leave of court, intervene. In exercising its discretion, the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

"D Procedure. A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 9. The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought. If the court allows the intervention, parties shall, within 10 days, file those responsive pleadings which are permitted or required by these rules for such pleading."

ORCP 33 applies to people who are not parties to an action who wish to become parties. Thus, under ORCP 33 D, the "person desiring to intervene" must serve a motion to intervene.

The procedural history of this case indicates that it was plaintiffs, not Guerrero, who sought to make Guerrero a party to the action. The second amended complaint added one new claim against one new defendant—a claim for a

declaratory judgment declaring the conveyance to Guerrero to be void. ORS 28.110 requires that, "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." In other words, plaintiffs added Guerrero to the lawsuit because they brought a new claim for declaratory relief in the action and were required by ORS 28.110 to make Guerrero a party to the action. There is nothing in the procedural history of this case to indicate that Guerrero moved to intervene in the case, and there is no evidence that she acted within the procedural requirements of ORCP 33. Thus, contrary to defendants' arguments, there is nothing to suggest that the addition of Guerrero as a party in the action was accomplished pursuant to ORCP 33.

■ Defendants also argue that the trial court erred in granting summary judgment declaring the conveyance to be void, because the evidence shows that Guerrero actually held an interest in the property before plaintiffs and Jimenez entered into their land sale contract, and that the recorded conveyance simply confirmed the existence of that interest. The evidence on which defendants rely appears to be Guerrero's affidavit, in which she states that she "entered into a domestic partnership [with Jimenez] * * * to pool our resources for our mutual benefit and to own property jointly." In other words, defendants contend that an unwritten agreement between Jimenez and Guerrero to own property jointly is sufficient to create a legal interest in real property.

Regardless of whether Guerrero had an interest in the property before plaintiffs and Jimenez entered the land sale contract for the property, the fact remains that the interest was not recorded until after plaintiffs filed their ORS 93.740 notice. The text of ORS 93.740 is clear in that regard: any conveyance *recorded after* that notice is void as to plaintiffs. Therefore, the trial court did not err in granting summary judgment on plaintiffs' declaratory judgment claim.

Defendants' fourth assignment of error concerns the award of attorney fees. The general judgment awarded attorney fees based on plaintiffs' breach of contract claim. Because

we reverse the judgment for plaintiffs on the breach of contract claim, we reverse the award of attorney fees as well.

■ Defendants' final assignment of error is that the court erred in *sua sponte* dismissing Jimenez's counterclaim for assault. Plaintiffs acknowledge that no motion for summary judgment was filed on the counterclaim. Nonetheless, plaintiffs argue that we should affirm the trial court's dismissal because there was no evidence to support the claim and therefore the trial court was correct to dismiss it. In its order dismissing the claim, the trial court offered no basis for its decision, other than finding that the parties "exchanged words over an apparent disagreement * * * but [Guerrero] stepped in and [defused] the situation" and that "[n]o complaint to law enforcement was made." It appears, then, that the trial court dismissed the claim on the basis of its own determination that the summary judgment record did not contain facts sufficient to support Jimenez's counterclaim of assault. The court lacked authority to dismiss a claim on summary judgment for which no motion for summary judgment had been made. *Hendgen v. Forest Grove Community Hosital*, 98 Or App 675, 677, 780 P2d 779 (1989). It therefore erred in dismissing the assault counterclaim.

On appeal, judgment for plaintiffs on breach of contract claim reversed, award of attorney fees reversed, dismissal of defendant Jimenez's assault counterclaim reversed, otherwise affirmed; cross-appeal dismissed as moot.